IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LYNDON SOUTHERN INSURANCE COMPANY | § § § | |
| VS. | § § § § | CIVIL ACTION NO. _____ |
| ROSA GLORIA REVELES, SONNY CURTISS WENCES and SAUL WENCES | § § § | JURY |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Lyndon Southern Insurance Company ("Lyndon Southern"), the Plaintiff herein, files this, its Original Complaint for Declaratory Judgment, and for cause would respectfully show the Court as follows:

**NATURE OF THE ACTION**

**I.**

1.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), Plaintiff Lyndon Southern seeks a declaration with respect to the rights, obligations, and legal relationships between it and Defendants in connection with a policy of personal auto insurance issued by Lyndon Southern to Jose Luis Melgoza-Ahiactzin ("Ahiactzin") and a personal injury lawsuit filed against Sonny Curtiss Wences ("Sonny") and Saul Wences ("Saul") by Rosa Gloria Reveles ("Reveles") in the 197th Judicial District Court of Cameron County, Texas, Cause No. 2016-DCL-08210, styled *Rosa Gloria Reveles v. Sonny Curtiss Wences and Saul Wences*" (hereinafter, the "underlying lawsuit"). In addition, Plaintiff seeks a declaration that Policy No. L-PR9621972-00

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT – Page 1**

is void to the extent that it purported to provide liability coverage for the 1998 Dodge Durango owned by Sonny and/or Saul and operated by Sonny that was involved in the subject accident because Lyndon Southern's named insured had no insurable interest in that vehicle.

## II.

### Parties

2.      Lyndon Southern is an insurance company authorized to do business and to write personal auto insurance in the State of Texas, having its principal place of business and residence in Illinois.

3.      Defendant Rosa Gloria Reveles is an individual resident of Cameron County, Texas.   Ms. Reveles may be served with summons at her primary residence, located at 803 E. Filmore, Brownsville, Texas 78520, or wherever she may be found.

4.      Defendant Sonny Curtiss Wences is an individual resident of Cameron County, Texas. Mr. Wences may be served with summons at his primary residence at 2018 Rancho Viejo Ave., Brownsville, Texas 78526, or wherever he may be found.

5.      Defendant Saul Wences is an individual resident of Hood County, Texas.   Sonny Wences may be served with summons at his primary residence at 6102 Collins Ct., Granbury, Texas 76048, or wherever he may be found.

## III.

### Jurisdiction and Venue

6.      This action is brought pursuant to 28 U.S.C. § 1332.   There is complete diversity between Plaintiff (a corporate citizen of the state of Illinois) and all Defendants (all of whom are individual citizens of the state of Texas).   Further, the amount in controversy in this action exceeds the sum of $75,000.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT – Page 2**

7.     Venue of this action is proper in the Brownsville Division of the United States District Court for the Southern District of Texas for the reason that the subject policy of insurance was issued for delivery in Cameron County, Texas, the underlying lawsuit was filed in Cameron County, and the motor vehicle accident made the basis of the underlying lawsuit occurred in Cameron County.   Further, Defendants Reveles and Sonny are residents of Cameron County, Texas.

## IV.

### FACTS AND ISSUES

8.     According to Plaintiff's Original Petition in the underlying lawsuit, a copy of which is attached hereto as Exhibit A, Reveles, on or about June 16, 2015, was operating a motor vehicle northbound on Juanita Avenue in Cameron County when Sonny failed to stop at a stop sign and collided with Reveles' vehicle.   Reveles alleged that Sonny's negligence caused the accident and her alleged injuries and damages.   Reveles also alleged that Saul was the owner of the 1998 Dodge Durango and that he was negligent in entrusting the vehicle to his brother, Sonny Wences, on the occasion in question.[1]

9.     In her Petition in the underlying lawsuit (Exhibit A), Reveles alleged that she sought medical treatment as a result of her alleged injuries.   As set forth on page 1 of Exhibit A, Reveles alleged that she sought "damages (including punitive damages) over $200,000 but not more than $1,000,000.00," because of her alleged injuries and damages, including (a) reasonable and necessary medical care and expenses in the past and future, (b) physical pain and suffering in the past and future, (c) physical impairment in the past and future, (d) loss of earnings in the past and

---

[1]     Sonny has claimed that he purchased the 1998 Dodge Durango from his brother, Saul, prior to the date of the subject accident, although he admitted that he did not take title to the vehicle.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT – Page 3**

future, (e) disfigurement in the future, (f) mental anguish in the past and future, and (g) cost of medical monitoring and prevention in the future.

10.     In addition, prior to filing the lawsuit, counsel for Reveles submitted a settlement demand letter to Plaintiff's authorized claims representative, Pronto General Agency, Ltd. ("Pronto"), a copy of which is attached hereto as Exhibit B, in which he contended that Reveles' claim had a settlement value of $250,000.

11.     In addition, and while recognizing that settlement negotiations at mediation are confidential, Plaintiff would show that at the recent mediation of this claim, counsel for Reveles submitted the same settlement demand of $250,000.   Plaintiff submits that the amount of the demand is relevant to establishing the amount in controversy in this case. *See, e.g., Stramel v. G.E. Capital Small Bus. Fin. Corp.*, 955 F.Supp. 65, 68 (E.D. Tex. 1997) (settlement demand letter was properly considered in determining whether case was removable); *Carnahan v. Southern Pacific R.R. Transp. Co.*, 914 F.Supp. 1430, 1431-1432 (E.D. Tex. 1995) ("This Court finds that the defendant has proven by a preponderance of the evidence that, as of the date of removal, the amount in controversy likely exceeded $50,000.   Specifically, the defendant has provided exhibits establishing that the Plaintiff has asked for approximately $73,000 to settle this case.   As economics help us understand, the rational amount for which one is willing to settle is generally less than the maximum jury award that is reasonably plausible at the conclusion of a successful trial.   From an economic viewpoint, then, clearly there is greater than $50,000 in controversy."); *Golden v. Dodge-Markham Co., Inc.*, 1 F.Supp.2d 1360, 1364 (M.D. Fl. 1998) (courts examine pre-removal settlement demands on an individual basis to determine if they provide a candid assessment of the amount likely to be recovered at trial); *Jackson v. American Bankers Ins. Co. of Florida*, 976 F.Supp. 1450-1454 (S.D. Al. 1997) (stating in denial of Plaintiff's Motion to Remand,

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT** – **Page 4**

"If plaintiffs are willing to settle the case for the sum of $70,000, then it follows *a fortiori* that plaintiffs would expect to receive considerably more than $70,000 at trial."). Based on the proof attached to this Petition, including but not limited to the evidence of the settlement demands by Reveles that were three times the required amount in controversy, Plaintiff submits that it has satisfied its burden to establish by a preponderance of the evidence that federal diversity jurisdiction exists in this case.

12.      On March 2, 2015, Lyndon Southern, by and through its managing general agent, Pronto General Agency, Ltd. ("Pronto"), issued a Texas personal auto policy to Jose Luis Melgoza-Ahiactzin, No. L-PR9621972-00, effective from March 2, 2015 to September 2, 2015.

13.      At the time of the subject accident, Sonny was operating a 1998 Dodge Durango owned by him and/or Saul.  The said 1998 Dodge Durango was not listed as a covered auto on Policy No. L-PR9621972-00 at the time it was issued to Ahiactzin.  Instead, the vehicle was added to the policy by amendment effective April 2, 2015.  A copy of the policy, including the amended declarations page, is attached hereto as Exhibit C.

14.      Sonny is not in any way related to Ahiactzin.  Ahiactzin did not at any time own or have any ownership interest in Sonny's 1998 Dodge Durango. Ahiactzin never paid any money towards the purchase of the vehicle, nor was he ever a signatory on any loan on the vehicle.  The vehicle was never titled in Ahiactzin's name. The vehicle was never garaged at Ahiactzin's residence and he never operated the vehicle. Ahiactzin had no interest whatsoever in Sonny's vehicle, nor was he in any way responsible for the operation, maintenance or use of the vehicle. Sonny was merely a friend of Ahiactzin, and Ahiactzin added the vehicle to his policy only as a favor to his friend. Attached as Exhibit D is the duly executed Affidavit of Jose Luis Melgoza-Ahiactzin (in Spanish and English).

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT – Page 5**

15.     The underlying lawsuit was filed on December 15, 2016. Saul was allegedly personally served with citation and a copy of the Plaintiff's Original Petition on or about February 20, 2017, at his residence in Granbury, Hood County, Texas.   Saul never delivered the suit papers served on him to Lyndon Southern or Pronto, nor did Saul ever ask the insurer for a defense under the policy.

16.     Saul never answered the lawsuit.   On or about May 3, 2017, Plaintiff took a Final Default Judgment against Saul in the total sum of $83,291.72, a copy of which is attached hereto as Exhibit E.   Not only does the default judgment obtained by Reveles against Saul confirm that the amount in controversy at issue here exceeds the sum of $75,000, but Plaintiff submits that the said Final Default Judgment estops Reveles from claiming that her damages in the pending lawsuit against Sonny are in excess of $83,291.72.

17.     Plaintiff submits that it owes no duty to pay any portion of the Final Default Judgment entered against Saul for the reason that the policy is void as to the subject 1998 Dodge Durango. In addition, or alternatively, Saul did not in any event qualify as a "covered person" under the Lyndon Southern policy issued to Ahiactzin; further, Saul never requested a defense under the Lyndon Southern policy.   Therefore, Lyndon Southern owed no duty to defend or indemnify Saul under Policy No. L-PR962197-00, and now owes no duty to pay to the Plaintiff, derivatively, any part of her default judgment against Saul.

18.     Sonny was allegedly served with citation on or about February 20, 2017. Sonny delivered the suit papers served on him to Ahiactzin's insurance agent. Lyndon Southern retained counsel to assume the defense of Sonnhy in the underlying lawsuit, albeit subject to a reservation of rights.

19.     After assuming Sonny's defense, Lyndon Southern, acting by and through its authorized claims representative, Pronto, attempted to obtain information from Ahiactzin as to why he added

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT – Page 6**

the 1998 Dodge Durango to his policy.  Multiple attempts were made to speak with Ahiactzin, and multiple attempts were made to take Ahiactzin's examination under oath by way of letters sent to multiple different addresses.  Ahiactzin never responded to any of the phone calls or letters. Subsequently, Plaintiff hired an independent investigator to attempt to track down Ahiactzin, and contact was made with him in New York, at which time the affidavits (Exhibit D) were secured from Ahiactzin.  The sworn testimony of Ahiactzin as set forth in his Affidavit establishes that Ahiactzin had no insurable interest whatsoever in Sonny's 1998 Dodge Durango.   Thus, the policy is void to the extent that it purported to provide liability coverage for Sonny's operation or use of the 1998 Dodge Durango.

20.     Accordingly, Lyndon Southern's policy issued to Ahiactzin did not and does not afford coverage for the subject motor vehicle accident of June 16, 2015, or for Sonny's operation of the 1998 Dodge Durango at the time of the accident; further, the Lyndon Southern policy does not afford coverage for Reveles's claim against Sonny in the underlying lawsuit or for Reveles's Final Default Judgment against Saul. As a matter of law, Lyndon Southern had and has no duty to defend or indemnify Sonny or Saul in connection with the allegations asserted against them in the underlying suit and no duty to pay the Final Default Judgment entered against Saul or any judgment that may subsequently be entered against Sonny.

## V.

### REQUEST FOR DECLARATORY RELIEF

21.     Lyndon Southern seeks a declaration with respect to the rights, obligations, and legal relationships between it and Defendants in connection with the subject policy of personal auto insurance issued by Lyndon Southern to Ahiactzin, the underlying lawsuit, and the Final Default Judgment obtained by Reveles against Saul in Cause No. 2016-DCL-08210.   Lyndon Southern

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT** – **Page 7**

requests that this Court enter a declaratory judgment finding and affirming that Lyndon Southern

had and has no duty to defend or indemnify Saul in connection with the claims asserted against

him in Cause No. 2016-DCL-08210, or otherwise, and that Lyndon Southern has no duty to pay

any part of the Final Default Judgment entered against Saul.   Lyndon Southern further requests

that this Court enter a declaratory judgment finding and affirming that the subject policy of

insurance is void to the extent that it purports to provide liability coverage for the 1998 Dodge

Durango owned by Sonny or Saul and operated by Sonny at the time of the subject accident for

the reason that Ahiactzin had no insurable interest in Sonny's vehicle.   Therefore, it was against

the public policy of the state of Texas for said vehicle to be insured on Ahiactzin's policy issued

by Lyndon Southern.   Because the policy is void as a matter of law as regards the subject 1998

Dodge Durango, Lyndon Southern owed and owes no duty to defend or indemnify Sonny or Saul

in Cause No. 2016-DCL-08210, no duty to pay the Final Default Judgment previously entered

against Saul, and no duty to pay any judgment that may subsequently be entered against Sonny.

## VI.

### CLAIM FOR ATTORNEY'S FEES

22.    Pursuant to the Federal Declaratory Judgment Act, Lyndon Southern would show that it is

entitled to an award of reasonable and necessary, equitable and just, attorney's fees in connection

with the filing and prosecution of this declaratory judgment action, including fees for any appeal.

### PRAYER FOR RELIEF

For the reasons stated herein, Lyndon Southern respectfully requests that this Court enter

a declaratory judgment in its favor as requested above, decreeing that the Lyndon Southern policy

issued to Ahiactzin, No. L-PR9621972-00, is void to the extent that it purported to provide liability

coverage for the 1998 Dodge Durango owned by Saul Wences and/or Sonny Wences and operated

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT** – Page 8

by Sonny Wences at the time of the subject accident because Ahiactzin had no insurable interest in the said vehicle.   Consequently, Lyndon Southern had and has no duty to defend or indemnify Sonny or Saul for the claims asserted against them in Cause No. 2016-DCL-08210. In addition, or alternatively, Lyndon Southern respectfully requests that this Court enter a declaratory judgment in its favor as requested above, decreeing that Lyndon Southern had and has no duty to defend or indemnify Defendant Saul Wences for the claims asserted against him in Cause No. 2016-DCL-08210, or for any claim arising from the subject motor vehicle accident of June 16, 2015, and no duty to pay any part of the Final Default Judgment entered against Saul Wences in the underlying suit because (1) he did not in any event qualify as a "covered person" under the terms of the policy and (2) he never complied with the notice conditions of the policy, including he never requested a defense.   Lyndon Southern further prays that it be awarded its reasonable and necessary attorney's fees, including its fees on appeal, from Defendants, along with all costs of court incurred herein, and that it be awarded all such other and further relief to which it may be justly entitled.

<div style="margin-left: 40%;">

Respectfully submitted,

BY: _Michael A. Hummert_

Michael A. Hummert
Lead Attorney
State Bar No. 10272000
mhummert@ekvallbyrne.com
EKVALL & BYRNE, LLP
4450 Sigma Road, Suite 100
Dallas, Texas 75244
TELEPHONE (972) 239-0839
FACSIMILE (972) 960-9517

ATTORNEYS FOR PLAINTIFF
LYNDON     SOUTHERN     INSURANCE
COMPANY

</div>

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT – Page 9**

# EXHIBIT A

FILED
2016-DCL-08210
12/15/2016 2:08:04 PM
Eric Garza
Cameron County District Clerk
By Ada Tovar Deputy Clerk
14307474

NO. 2016-DCL-08210
NO. _____

| | | |
|---|---|---|
| ROSA GLORIA REVELES | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | Cameron County - 197th District Court |
| V. | § | |
| | § | _____ JUDICIAL DISTRICT |
| | § | |
| SONNY CURTISS WENCES | § | |
| and SAUL WENCES | § | |
| Defendants. | § | CAMERON COUNTY, TEXAS |

---

**PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, WRITTEN DISCOVERY, NOTICE OF INTENT TO USE DOCUMENTS PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE, RULE 193.7 AND PLAINTIFFS' REQUEST FOR NOTICE BY DEFENDANT OF INTENT TO SEEK ADMISSION OF CRIMINAL CONVICTIONS OF WITNESSES PURSUANT TO TEXAS RULES OF EVIDENCE RULE 609(f)**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Rosa Gloria Reveles, hereinafter referred to as Plaintiff, complaining of and about Sonny Curtiss Wences and Saul Wences, hereinafter referred to as Defendants, and for cause of action show unto the Court the following:

**I.**
**CLAIMS FOR RELIEF AND DISCOVERY CONTROL PLAN**

Plaintiff seeks damages (including punitive damages) over $200,000 but not more than $1,000,000.00, pursuant to Tex. R. Civ. P. 47(c)(4).   Plaintiffs intend that discovery be conducted under Discovery Level 3.

**II.**
**PARTIES AND SERVICE**

Plaintiff, Rosa Gloria Reveles, is an individual whose address is 803 East Filmore, Brownsville, Texas 78526.

Defendant Sonny Curtiss Wences, an Individual who is a resident of Texas, may be served with process at his home at the following address: 2018 Rancho Viejo Ave., Brownsville, Texas 78526. Service of said Defendant as described above can be effected by personal delivery.

Defendant Saul Wences, an Individual who is a resident of Texas, may be served with process at his home at the following address: 1035 Pawnee Trail, Granbury, Texas 76048. Service of said Defendant as described above can be effected by personal delivery.

## III.
## JURISDICTION AND VENUE

The subject matter in controversy is within the jurisdictional limits of this court.

Venue in Cameron County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## IV.
## FACTS

On or about June 16, 2015, Plaintiff, Rosa Gloria Reveles, was traveling northbound on Juanita Avenue in Brownsville, Texas approaching the intersection of Carlos Avenue. Immediately prior to the collision, Defendant Sonny Curtiss Wences was traveling westbound on Carlos Avenue in Brownsville, Texas.   Defendant, failing to stop at a city erected stop sign, negligently entered the intersection violently colliding into Plaintiff.  As a result of the collision, Plaintiff sustained severe bodily injuries.

Additionally, Defendant Saul Wences was the owner of the vehicle operated by Defendant Sonny Curtiss Wences.   Upon information and belief, Defendant Sonny Curtiss Wences was an incompetent, unlicensed driver and Defendant Saul Wences negligently entrusted the vehicle driven by Sonny Curtiss Wences.

**V.**
## PLAINTIFF'S CLAIMS OF NEGLIGENCE AGAINST
## DEFENDANT SONNY CURTISS WENCES

Defendant Sonny Curtiss Wences, had a duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those described herein. Plaintiff's injuries were proximately caused by Defendant Sonny Curtiss Wences' negligent, careless and reckless disregard of said duty.

The negligent, careless and reckless disregard of duty of Defendant Sonny Curtiss Wences consisted of, but is not limited to, the following acts and omissions:

A.   In that Defendant failed to keep a proper lookout for Plaintiff's safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances; Texas Transportation Code §545.401;

B.   In that Defendant failed to turn his motor vehicle to the right or left in an effort to avoid the collision complained of; Texas Transportation Code §545.401;

C.   In that Defendant failed to maintain a clear and reasonable distance with other motorists; Texas Transportation Code §545.062;

D.   In that Defendant failed to keep reasonable distance away from other motorists as a person using ordinary prudent care would have done; Texas Transportation Code §545.062;

E.   In that Defendant was operating his motor vehicle at a rate of speed which was greater than that would have been operated by a person of ordinary prudence under the same or similar circumstances; Texas Transportation Code §545.062;

F.   In that Defendant failed to yield the right-of-way when he could safely enter or cross a highway from an alley, building, private road or driveway;  Texas Transportation Code §545.155;

G.   In that Defendant failed to stop at an Official-Traffic Control Device, to wit: at the intersection of Juanita Avenue and Carlos Avenue in Brownsville, Texas, in violation of a stop sign; Texas Transportation Code §544.004;

H.   In that Defendant failed to stop, yield, and grant immediate use of the intersection to conform to the Official Traffic-Control Device - i.e. a stop sign erected by public authority; Texas Transportation Code §545.151;

I.  In that Defendant failed to enter into the intersection only when he could have safely entered without interference or collision with other traffic, and specifically, with Plaintiff's motor vehicle; Texas Transportation Code §545.151; and

J.  In that Defendant failed to pay proper attention as a person using ordinary prudent care would have done; Texas Transportation Code §545.401.

## VI.
## PLAINTIFF'S CLAIMS OF NEGLIGENT ENTRUSTMENT AGAINST SAUL WENCES

On June 16, 2015, Defendant Saul Wences was the owner of the vehicle operated by Sonny Curtiss Wences.

Defendant Saul Wences entrusted the vehicle to Defendant Sonny Curtiss Wences a reckless and incompetent driver.

Defendant Saul Wences through the exercise of reasonable care should have known that Defendant Sonny Curtiss Wences was a reckless and incompetent driver.

As described herein, Defendant Saul Wences was negligent on the occasion in question.

Defendant Saul Wences was the proximate cause of Plaintiff's damages.

## VII.
## DAMAGES FOR PLAINTIFF ROSA GLORIA REVELES

As a direct and proximate result of the occurrence made the basis of this lawsuit Plaintiff Rosa Gloria Reveles, was caused to suffer bodily injury, and to incur the following damages:

A.  Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff Rosa Gloria Reveles, for the necessary care and treatment of the injuries resulting from the collision complained of herein and such charges are reasonable and were usual and customary charges for such services in Cameron County, Texas;

B.  Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

C.  Physical pain and suffering in the past;

D.  Physical pain and suffering in the future;

E.    Physical impairment in the past;

F.    Physical impairment which, in all reasonable probability, will be suffered in the future;

G.    Loss of earnings in the past;

H.    Loss of earning capacity which will, in all probability, be incurred in the future;

I.    Disfigurement in the future;

J.    Mental anguish in the past;

K.    Mental anguish in the future; and

L.    Cost of medical monitoring and prevention in the future.

## VIII.
### PLAINTIFF'S REQUESTS FOR DISCLOSURE

Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure.

## IX.
### PLAINTIFF'S INTERROGATORIES TO DEFENDANT SONNY CURTISS WENCES

Defendant is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure.

1.    Please state your full name, address, telephone number, date of birth, driver's license number, social security number, and occupation of the person answering these interrogatories.

**ANSWER:**

2.    State the full name, telephone number, address and your immediate supervisor for your employers for the last five (5) years.  Please indicate if you have held any ownership interest in this (these) business(es).

**ANSWER:**

3.    State whether you were acting within the course and scope of any employment, service or agency at the time of the collision, and describe the relationship of the persons involved.

ANSWER:

4.      State the Style, Court and Cause number of any lawsuit you or minor defendant have been a party to and the final disposition of said suit.

ANSWER:

5.      Please state any and all traffic violations you have had in the five (5) years preceding this collision.  Please indicate if you have ever had your driving license revoked due to any of these violations and the period of time your license was revoked.

ANSWER:

6.      Please state whether you have had any other motor vehicle collisions in the past five (5) years.  If so, please list the date and location of such collision, the parties involved and a factual description of the collision.

ANSWER:

7.      List all criminal arrests and/or charges against you, your predecessors, affiliates, or subsidiaries, or divisions by giving the cause number; identities of all accused; court of jurisdiction; description of criminal charges; date and place of arrest; plea made; date of trial and/or plea bargain; whether or not convicted and on what charges; time served; date of release from confinement; whether or not granted pardon or parole, and if so, date pardon granted or parole was or will be successfully completed.

ANSWER:

8.      State what intoxicating beverages, if any, you had consumed and what drugs and/or medications you had taken for the 24 hour period prior to the collision.

ANSWER:

9.      Do you contend that any personal injuries or damages sustained by Plaintiff were caused by an occurrence other than this collision, such as a disease or physical condition, either before or after the incidents made the basis of this case?  If so, describe in detail such other occurrence, disease, injury or condition.

ANSWER:

10.     Do you contend that Plaintiff violated any traffic laws at the time or immediately prior to the collision?  If so, describe what you contend to be the violation or give the statute number of the violation.

ANSWER:

11.     If you contend that the collision in question was an "unavoidable accident," describe in detail what you believe to be the cause of the collision, to the exclusion of the conduct of Plaintiff.

**ANSWER:**

12.     If you contend that someone else's conduct or something else is the "sole proximate cause" of the collision in question, describe in detail the identity of that person, or what exactly caused the collision.

**ANSWER**

13.     State the name and address of the owner and all occupants of the vehicle you were operating at the time of the collision.

**ANSWER:**

14.     State the make and model of the vehicle you were driving at the time of the collision.

**ANSWER:**

15.     Give the date of the last inspection of the vehicle you were driving at the time of the collision and the name of the inspection station giving the inspection and the date the inspection was given.

**ANSWER:**

16.     Please give a detailed description of exactly how the collision made the basis of the lawsuit occurred.  Please indicate in your description the speed or estimated speed that the vehicles were traveling at the time of the incident.  On the back of this sheet, please draw a diagram to indicate the location of the collision and the direction that the vehicles were traveling at the time of the collision.

**ANSWER:**

17.     Please indicate the speed or estimated speed that the vehicles were traveling at the time of the incident, including your speed at the time of the impact, and if you contend you applied your brakes prior to impact, and what speed you were traveling prior to applying your brakes.

**ANSWER:**

18.     Were you cited for her involvement in the collision? If so, state:

        a.      Citation number;

    b.      Entity issuing citation;
    c.      Description of violations charged;
    d.      Court of jurisdiction;
    e.      Whether you contested the citation;
    f.      Whether a jury trial was held; and
    g.      Disposition of the citation/charges.

**ANSWER:**

19.    Did you, your insurance company, or any other individual engage in communication with Plaintiff's insurance company with respect to the above collision and/or Plaintiff? If so, state:

    a.      Date, place and time when same was made;
    b.      Identity, employer and employer's address of the persons engaging in said communication, whether oral or written, including but not limited to email messaging;
    c.      The reason for such communication;
    d.      What was said by plaintiffs' insurer, its agents or its employees at that time, specifically identifying the person speaking; and
    e.      What was said by your insurer, its agents or its employees at that time, specifically identifying the person speaking.

**ANSWER:**

20.    Please state where you had been just prior to the collision, where she was going at the time of the collision, and the purpose of the trip.

**ANSWER:**

21.    Do you contend that there were any obstructions to visibility for any of the vehicle operators? If so, indicate what the obstructions were immediately before the collision and how the obstructions contributed to the collision in question.

**ANSWER:**

22.    Please identify (by title, author, editor, edition, publisher, date of publication, section, portion, and page) every published treatises, periodical, or pamphlet on a subject of history, medicine, or other science or art that you may offer to use in the trial of this case under Rule 803(18) of the Texas Rules of Evidence.

**ANSWER:**

23.    Do you deny that you were negligent in the incident involved herein? If so, state each and every fact upon which the denial of negligence is based.

**ANSWER:**

## X.
**PLAINTIFF'S INTERROGATORIES TO DEFENDANT SAUL WENCES**

Defendant is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure.

1.  Please state the full name, address, telephone number, date of birth, driver's license number, social security number, and occupation of the person answering these interrogatories.

    **ANSWER:**

2.  State the full name, telephone number, address and your immediate supervisor for your employers for the last five (5) years.  Please indicate if you have held any ownership interest in this (these) business(es).

    **ANSWER:**

3.  State the Style, Court and Cause number of any lawsuit you have been a party to and the final disposition of said suit.

    **ANSWER:**

4.  Please state any and all traffic violations you have had in the five (5) years preceding this collision.  Please indicate if you have had your driving license revoked due to any of these violations and the period of time your license was revoked.

    **ANSWER:**

5.  Please state whether you have had any other motor vehicle accidents in the past five (5) years.  If so, please list the date and location of such accident, the parties involved and a factual description of the accident.

    **ANSWER:**

6.  List all criminal arrests and/or charges against you, your predecessors, affiliates, or subsidiaries, or divisions by giving the cause number; identities of all accused; court of jurisdiction; description of criminal charges; date and place of arrest; plea made; date of trial and/or plea bargain; whether or not convicted and on what charges; time served; date of release from confinement; whether or not granted pardon or parole, and if so, date pardon granted or parole was or will be successfully completed.

**ANSWER:**

7. Do you contend that any personal injuries or damages sustained by Plaintiff were caused by an occurrence other than this accident, such as a disease or physical condition, either before or after the incidents made the basis of this case? If so, describe in detail such other occurrence, disease, injury or condition.

   **ANSWER:**

8. Do you contend that Plaintiff violated any traffic laws at the time or immediately prior to the collision? If so, describe what you contend to be the violation or give the statute number of the violation.

   **ANSWER:**

9. If you contend that the collision in question was an "unavoidable accident," describe in detail what you believe to be the cause of the accident, to the exclusion of the conduct of Plaintiff.

   **ANSWER:**

10. If you contend that someone else's conduct or something else is the "sole proximate cause" of the accident in question, describe in detail the identity of that person, or what exactly caused the collision.

    **ANSWER:**

11. Give the date of the last inspection of the vehicle involved in the subject accident and the name of the inspection station giving the inspection and the date the inspection was given.

    **ANSWER:**

12. Did you, your insurance company, or any other individual engage in communication with Plaintiff's insurance company with respect to the above accident and/or Plaintiff? If so, state:

    a. Date, place and time when same was made;

    b. Identity, employer and employer's address of the persons engaging in said communication, whether oral or written, including but not limited to email messaging;

    c. The reason for such communication;

    d.        What was said by plaintiffs' insurer, its agents or its employees at that time, specifically identifying the person speaking; and

    e.        What was said by your insurer, its agents or its employees at that time, specifically identifying the person speaking.

13.      Please identify (by title, author, editor, edition, publisher, date of publication, section, portion, and page) every published treatises, periodical, or pamphlet on a subject of history, medicine, or other science or art that you may offer to use in the trial of this case under Rule 803(18) of the Texas Rules of Evidence.

      <u>ANSWER</u>:

14.      Do you deny that you were negligent in the incident involved herein? If so, state each and every fact upon which the denial of negligence is based.

      <u>ANSWER</u>:

<div align="center">

**XI.**
**<u>PLAINTIFF'S REQUESTS FOR PRODUCTION TO DEFENDANTS</u>**

</div>

Please take notice that request is hereby made by Plaintiff pursuant to Rule 196 of the Texas Rules of Civil Procedure, that Defendants produce or permit the undersigned attorney, Alexander Begum, to inspect and copy or reproduce the items hereinafter designated on Exhibit "A" attached hereto.

Within 50 days after service of these Requests for Production, you must serve a written response to the undersigned attorney at 2401 Wild Flower, Suite B, Brownsville, Texas 78526, including the items requested or stating with respect to each request that an inspection and copying or reproduction will be permitted as requested.

In the event a request is objected to, please specifically state (a) the legal or factual basis for the objection, and (b) the extent to which you refuse to comply with the request. Pursuant to Rule 193.2(b) of the Texas Rules of Civil Procedure, a party must comply with as much of the request to which the party has made no objection unless it is unreasonable under the circumstances to do so before obtaining a ruling on the objection.

1.  Color copies of all photographs taken in connection with Plaintiff's cause of action in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

2.  Color copies of all photographs taken of the scene of the collision or the surrounding area of the scene of the collision in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

3.  Color copies of all photographs taken of Plaintiff which may be in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

4.  All pictures, motion pictures, movies, films, or photographic material of any kind taken of Plaintiff which are in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

5.  All pictures, motion pictures, movies, films, or photographic material of any kind concerning the scene, vehicles, products or the events and happenings made the basis of the lawsuit taken before, during or after the collision in question which are in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

6.  All written statements made by the Plaintiff and/or Defendant in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

7.  All oral statements made by Plaintiff and/or Defendant which were either recorded or taped on an electronic device or recorder which are in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

8.  A copy of all documents filed with any state, county, city, federal or governmental agency, institution or department containing information about Plaintiff, which is in the possession, constructive possession, custody or control of Defendant, Defendant's attorney or anyone acting on Defendant's behalf.

9.  All written reports of inspection, tests, writings, drawings, graphs, charts, recordings or opinions of any expert who has been used for consultation and whose work product forms a basis either in whole or in part of the opinions of an expert who is to be called as a witness. (If the discoverable factual materials have not been received or reduced to a tangible form, request is hereby made that Defendant advise Plaintiff accordingly and reduce such material to a tangible form).

10. A curriculum vitae or resume for any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert.

11. Any and all copies of investigation documentation, reports and/or memoranda made by or submitted to Defendant, as a result of the collision which has been made the basis of Plaintiffs' lawsuit.

12. Any and all written communications, including but not limited to letters and/or memorandums, between agents, employees and/or representatives of Defendant that Defendant prepared as a result of the collision made the basis of Plaintiffs' lawsuit.

13. Copies of estimates, invoices, and/or any other written documentation which were prepared as a result of the damage to any vehicles involved in the collision made the basis of Plaintiff's lawsuit.

14. Copies of any contracts or agreements between Defendant and any vehicle maintenance or repair services in effect on June 16, 2015.

15. Copies of any and all books, documents or other tangible things which may or may not be introduced at trial, but which may have a bearing on Plaintiff's cause of action and may be used as demonstrative evidence at trial.

16. If not otherwise provided, the following:

    a.    Witness statements;
    b.    Party statements;
    c.    Police report;
    d.    Photographs of scene -- laser color copies;
    e.    Photographs of vehicles -- laser color copies;
    f.    Diagrams/maps of scene;
    g.    Repair invoices/estimates;
    h.    Medical bills, records, and reports related to Plaintiffs;
    i.    Wage loss records related to Plaintiffs;
    j.    Any materials generated by special investigations unit related to Plaintiffs;
    k.    Any surveillance materials of Plaintiffs or witnesses;
    l.    Colossus dissection forms/input data;
    m.    Colossus consultation report; and
    n.    Information obtained from PIP/Med Pay insurer.

17. All documents and things relating to any expert retained to testify, including but not limited to:

    a.    Resume/curriculum vitae;
    b.    Fee chart;
    c.    All 1099s from your attorneys firm;
    d.    All 1099s from your insurance company;
    e.    List of all cases worked on behalf of your attorneys firm;
    f.    List of all cases work on behalf of your insurance company;
    g.    List of all cases testified in; and

h.    Entire working file -- correspondence, notes, calculations, tests, analyses, etc.

18.    Copies of any investigative findings substantiating your denial of liability.

19.    Copies of any investigative findings substantiating your denial of the claim for damages.

20.    All reports prepared by any expert.

21.    As to any and all insurance policies or other contractual arrangement that may obligate an insurance company or other person, firm or corporation to provide any investigative services or defense for the defendant motor carrier or the defendant driver in this case or may be obligated to pay any portion of any judgment that may be rendered against the defendant motor carrier or the defendant driver, produce the following documents and items, to wit:

a.    Policies with all additions and deletions;

b.    All prior claims paid under any such policies that will be deducted from     the amount for which any such insurance company may have to pay in this case;

c.    The total amount of money for which each such insurance company would be liable for payment on behalf of the defendant motor carrier or the defendant driver;

d.    All loss control reports made by any present or previous insurance company concerning the defendant motor carrier's operations;

e.    The amounts of all other claims being currently made against any such insurance policies other than by these Plaintiffs; and

f.    Contracts describing the obligation of any person, firm or corporation other than an insurance company to provide investigative or legal defense services for the benefit of the defendant motor carrier or defendant driver.

22.    Produce a copy of the front and back of your driver's license or government issued identification card.

## XII.
## PLAINTIFF'S REQUESTS FOR ADMISSIONS TO
## DEFENDANT SONNY CURTISS WENCES

Plaintiff, pursuant to Tex. R. Civ. Procedure 198 propound the following Requests for Admissions to Defendant. Defendant's response is due within fifty (50) days from the date of service thereof. Plaintiff also requests that Defendant continue to supplement Defendant's responses to these Requests for Admissions as provided for by the Rules.

1.    That you were driving a 1998 Dodge Durango, license plate no. DNF6560 on the date of the incident made the basis of this suit.

ADMIT OR DENY: _____

2.   That the vehicle driven by you was owned by you at the time of the incident made the basis of this suit.

      ADMIT OR DENY: _____

3.   That the vehicle driven by you was being operated by her with the permission of its registered owner, on the date of the car crash.

      ADMIT OR DENY: _____

4.   That the vehicle driven by you was owned by you and was under the operation and control of you, acting within the course and scope of any employment, service or agency at the time of the incident made the basis of this suit.

      ADMIT OR DENY: _____

5.   That the vehicle driven by you was owned by your employer and was under your operation and control, acting within the course and scope of any employment, service or agency at the time of the incident made the basis of this suit.

      ADMIT OR DENY: _____

6.   That you caused the incident made the basis of this lawsuit.

      ADMIT OR DENY: _____

7.   That your actions were the sole cause of the incident made the basis of this lawsuit.

      ADMIT OR DENY: _____

8.   That no other entity contributed to cause the incident made the basis of this lawsuit.

      ADMIT OR DENY: _____

9.   That Plaintiff did not contribute to the cause of the incident made the basis of this lawsuit.

      ADMIT OR DENY: _____

10.  That the vehicle driven by you was in a dangerous or unsafe condition, to wit: the brakes in the vehicle were defective at the time of the incident made the basis of this suit.

      ADMIT OR DENY: _____

11.    That you failed to maintain a proper lookout at the time of the incident made the basis of this suit.

      ADMIT OR DENY: _____

12.    That you failed to keep such a distance away from the Plaintiff's vehicle so as not to cause the collision that did occur on the date of the collision.

      ADMIT OR DENY: _____

13.    That you, at the time of the incident made the basis of this suit, failed to yield the right of way to the Plaintiff.

      ADMIT OR DENY: _____

14.    That immediately prior to impact, you failed to apply proper braking of her vehicle in an effort to avoid the collision complained of.

      ADMIT OR DENY: _____

15.    That immediately prior to impact, your lane of travel was governed by a traffic light, on the date of the car crash.

      ADMIT OR DENY: _____

16.    That immediately prior to impact, your lane of travel was governed by a stop sign, on the date of the car crash.

      ADMIT OR DENY: _____

17.    That Plaintiff was injured as a result of the collision made the basis of this lawsuit.

      ADMIT OR DENY: _____

18.    That you were personally served with the summons and complaint.

      ADMIT OR DENY: _____

19.    That a resident of your household was personally served with the summons and complaint.

      ADMIT OR DENY: _____

20.   That you have no basis to assert as a defense or affirmative defense to the subject collision, lack of service of process.

      ADMIT OR DENY: _____

21.   That you have no basis to assert as a defense or affirmative defense to the subject collision, insufficiency of service of process.

      ADMIT OR DENY: _____

22.   That you have no basis to assert as a defense or affirmative defense to the subject collision, lack of personal jurisdiction.

      ADMIT OR DENY: _____

23.   That Plaintiff offered your insurance company an opportunity to settle Plaintiff's claims within your insurance policy limits.

      ADMIT OR DENY: _____

24.   That your insurance company provided an insurance policy covering the vehicle that you were operating at the time of the car crash.

      ADMIT OR DENY: _____

25.   That your insurance company has agreed to provide insurance on your behalf for all injuries and damages sustained by Plaintiff's arising out of the car crash.

      ADMIT OR DENY: _____

26.   That your insurance company has classified Plaintiff's claims as suspicious.

      ADMIT OR DENY: _____

27.   That your insurance company has refused to accept liability for Plaintiff's claims, forcing Plaintiff to file this lawsuit.

      ADMIT OR DENY: _____

28.   That at the time of the crash made the basis of this lawsuit you were under the influence of drugs or narcotics.

      ADMIT OR DENY: _____

29.   That Plaintiff is an honest person.

ADMIT OR DENY: _____

30.     That Plaintiff is a truthful person.

## XIII.
## PLAINTIFF'S REQUESTS FOR ADMISSIONS TO
## DEFENDANT SAUL WENCES

Plaintiff, pursuant to Tex. R. Civ. Procedure 198 propounds the following Requests for Admissions to Defendant.  Defendant's response is due within fifty (50) days from the date of service thereof.   Plaintiff also requests that Defendant continue to supplement Defendant's responses to these Requests for Admissions as provided for by the Rules.

1.      That Sonny Curtiss Wences was driving a 1998 Dodge Durango, license plate no. DNF6560 on the date of the incident made the basis of this suit.

ADMIT OR DENY: _____

2.      That the vehicle driven by Sonny Curtiss Wences was owned by you at the time of the incident made the basis of this suit.

ADMIT OR DENY: _____

3.      That the vehicle driven by Sonny Curtiss Wences was being operated by him with the permission of its registered owner, on the date of the car crash.

ADMIT OR DENY: _____

4.      That the vehicle driven by Sonny Curtiss Wences, was owned by you and was under the operation and control of you, acting within the course and scope of any employment, service or agency at the time of the incident made the basis of this suit.

ADMIT OR DENY: _____

5.      That the vehicle driven by Sonny Curtiss Wences, was owned by your employer and was under your operation and control, acting within the course and scope of any employment, service or agency at the time of the incident made the basis of this suit.

ADMIT OR DENY: _____

6.   That Sonny Curtiss Wences caused the incident made the basis of this lawsuit.

     ADMIT OR DENY: _____

7.   That Sonny Curtiss Wences' actions were the sole cause of the incident made the basis of this lawsuit.

     ADMIT OR DENY: _____

8.   That no other entity contributed to cause the incident made the basis of this lawsuit.

     ADMIT OR DENY: _____

9.   That Plaintiff did not contribute to the cause of the incident made the basis of this lawsuit.

     ADMIT OR DENY: _____

10.  That the vehicle driven by Sonny Curtiss Wences, was in a dangerous or unsafe condition, to wit:  the brakes in the vehicle were defective at the time of the incident made the basis of this suit.

     ADMIT OR DENY: _____

11.  That the vehicle driven by Sonny Curtiss Wences was not under your control in that the vehicle skid and crashed into Plaintiff's vehicle.

     ADMIT OR DENY: _____

12.  That Sonny Curtiss Wences failed to maintain a proper lookout at the time of the incident made the basis of this suit.

     ADMIT OR DENY: _____

13.  That Sonny Curtiss Wences failed to keep such a distance away from the Plaintiff's vehicle so as not to cause the collision that did occur on the date of the accident.

     ADMIT OR DENY: _____

14.  That immediately prior to impact Sonny Curtiss Wences failed to apply proper braking of your vehicle in an effort to avoid the collision complained of.

     ADMIT OR DENY: _____

15. That immediately prior to impact Sonny Curtiss Wences' lane of travel was governed by a traffic light, on the date of the car crash.

ADMIT OR DENY: _____

16. That Plaintiff was injured as a result of the accident made the basis of this lawsuit.

ADMIT OR DENY: _____

17. That you were personally served with the summons and complaint.

ADMIT OR DENY: _____

18. That a resident of your household was personally served with the summons and complaint.

ADMIT OR DENY: _____

19. That you have no basis to assert as a defense or affirmative defense to the subject accident, lack of service of process.

ADMIT OR DENY: _____

20. That you have no basis to assert as a defense or affirmative defense to the subject accident, insufficiency of service of process.

ADMIT OR DENY: _____

21. That you have no basis to assert as a defense or affirmative defense to the subject accident, lack of personal jurisdiction.

ADMIT OR DENY: _____

22. That Plaintiff offered your insurance company an opportunity to settle her claims within your insurance policy limits.

ADMIT OR DENY: _____

23. That your insurance company provided an insurance policy covering the vehicle that Sonny Curtiss Wences was operating at the time of the car crash.

ADMIT OR DENY: _____

24. That your insurance company has agreed to provide insurance on your behalf for all injuries and damages sustained by Plaintiff arising out of the car crash.

ADMIT OR DENY: _____

25.     That your insurance company has classified Plaintiff's claims as suspicious.

        ADMIT OR DENY: _____

26.     That your insurance company has refused to accept liability for Plaintiff's claims, forcing
        Plaintiff to file this lawsuit.

        ADMIT OR DENY: _____

27.     That Plaintiff is an honest person.

        ADMIT OR DENY: _____

28.     That Plaintiff is a truthful person.

        ADMIT OR DENY: _____

## XIV.
## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the
Defendants be cited to appear and answer herein, and that upon a final hearing of the cause,
judgment be entered for the Plaintiff against Defendants for damages in an amount within the
jurisdictional limits of the Court; together with pre-judgment interest (from the date of injury
through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the
legal rate, costs of court; and such other and further relief to which the Plaintiffs may be entitled
at law or in equity.

Respectfully submitted,

**BEGUM LAW GROUP**

/s/ *Alexander Begum*
Alexander Begum
State Bar No.: 24031469
2401 Wild Flower, Suite B
Brownsville, Texas 78526
Telephone:  (956) 982-1800
Facsimile: (956) 982-8602
Email: abegum@texaslegalgroup.com
**ATTORNEY FOR PLAINTIFF**

## COURTESY NOTICE TO DEFENDANTS

If you had insurance at the time of the collision, please contact and forward a copy of this petition to your insurance company.

# EXHIBIT B





**BEGUM**
LAW GROUP

| | | |
|---|---|---|
| Alexander Michael Begum | 5826 IH10 West | Other Offices: |
| David M. Adkisson | San Antonio, Texas 78201 | McAllen, Texas |
| Richard R. Storm, Jr. | T: 210-564-9854 | Brownsville, Texas |
| Mario Cisneros | F: 210-564-9857 | Laredo, Texas |

**November 4, 2016**

<u>**VIA PRIORITY MAIL**</u>
<u>**& CMRRR 7014 1200 0001 2451 0635**</u>
Attn: Mark Beede
**Pronto General Agency**
P.O. Box 3267
Brownsville, TX 78523-3267

| | |
|---|---|
| Our Client: | Rosa Gloria Reveles |
| Your Insured: | Jose Luis Melgoza-Ahiactzin, Wences Sonny Curtiss & any |
| | reponsible entity known & unknown |
| Claim Number: | 104814 |
| Date of Incident: | June 6, 2016 |

## <u>STOWERS DEMAND FOR SETTLEMENT</u>

Dear Mr. Beede,

As you know, the above-referenced claimant is represented by this law firm in her claims for injuries and damages as a result of an accident caused by the negligence and recklessness of Wences Sonny Curtiss and negligent entrustment of Jose Luis Melgoza-Ahiactzin. Please be advised that this time settlement demand is submitted pursuant to the Texas Supreme Court holding in *G.A. Stowers Furniture v. American Indemnity Co., 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) and Allstate Insurance Co. v. Kelly, 680 S.W.2d 595 (Tex. Civ. App-Tyler, 1984, writ ref'd n.r.e.)*. All statements set forth herein are made without prejudice and are intended solely for settlement purposes.

## LIABILITY

This claim arises from a motor vehicle collision which occurred on June 6, 2016. The insured failed to keep a proper lookout, failed to control speed, disregarded a stop and go signal and violently collided with my client's vehicle at an intersection. Please see the attached Police Report.

1

The Insured's negligence caused my Client to experience excruciating injuries to her entire body. As your evaluation and processing of this claim will determine, my client's injuries was sustained through no fault of her own and her acts upon the roadway did not contribute to this collision.

## INJURIES

I am enclosing for your review the medical records/reports and medical invoices of the following health care providers:

## ROSA REVELES

| | | |
|---|---|---|
| 1. | **South Texas Clinic of Chiropractic** | $ 3,700.00 |
| 2. | **L V Imaging** | $ 2,250.00 |
| 3. | **Hammami Imaging Associates** | $   600.00 |
| 4. | **Victor A. Pallares, MD** | $41,261.72 |
| 5. | **Jose Dones-Vazquez, MD PA** | $   480.00 |

Following the Collision, fifty-six years old Ms. Reveles began to experience a sudden onset of pain to her body. Initially, she thought the pain would self alleviate with over the counter pain medications. Unfortunately, as time with by the pain became worse and further unbearable.  As her condition worsened, she decided to consult **Dr. Aaron Guerra at South Texas Clinic of Chiropractic**. Ms. Reveles complained of pain to her spinal region. Based on the subjective complaints and findings of medical examinations, Dr. Guerra gave the following <u>diagnoses</u>:

1.  722.10 Lumbar Disc Displacement
2.  339.20 Acute Post Traumatic Headaches
3.  847.1 Thoracic sprain/strain
4.  719.08 Edema of facet joint Lumbar
5.  847.2 Lumbar Strain
6.  739.3 Lumbar Segmental Dysfunction
7.  729.1 Lumbar Myofascitis
8.   719.08 Edema of the Thoracic Facet Joint
9.   839.21 Subluxation of Thoracic Spine
10. 719.48 Thoracic Pain
11. 719.58 Stiffness in Thoracic Area

Upon diagnoses, Dr. Guerra decided to administer a regimen of conservative therapy for Ms. Reveles to follow in a desperate effort to return her to pre-collision health. Her conservative therapy sessions included the following:

2

- Specific articular adjustments to restore joint form and function, relieve joint stress, pain and inflammation, and to reduce fibrotic scarring of the injury.
- Electrical stimulation was performed to decrease muscle spasm, promote tissue healing, and for its analgesic effect.
- Hot packs were performed to increase cellular metabolism and decrease muscle spasm in post-acute phase of treatment.
- Intersegmental traction was performed to promote joint mobility, improve synovial fluid exchange and reduce the risk of adhesion formation.
- Ultrasound treatments were performed as adjunctive therapy for the treatment of pain, soft –tissue injury and joint dysfunction.  Specific clinical application include: reduction of edema, increase local blood flow, micro massage, and to soften scar tissue.
- Manual therapy techniques including myofascial release, manual traction, and manual lymphatic drainage were preformed to facilitate removal of cellular toxins, restore normal muscle tone, and improve motion.

During the therapy sessions, Dr. Guerra ordered for MRI examination for further evaluation of the injuries.

On August 11, 2015, Ms. Reveles underwent the MRI and x-ray examination. **Dr. Ghassan Hammami, M.D**. interpreted the MRI reports which showed the following life altering changes:

**Lumbar Spine:**
- L3-4: There is a 2 mm posterior disc bulge with some impingement on the thecal sac
- L4-5: There is a 3 mm posterior and posterolateral disc herniation with impingement on the central aspect of the thecal sac and impingement on the right neural exit foramen.
- L5-S1: There is sacralization of L5 with significant narrowing of the disc space between L5 and S1. There is minimal posterior bulge with minimal impingement on the thecal sac.

Based on the positive MRI results, Dr. Guerra referred Ms. Reveles to **Dr. Jose Dones-Vazquez, M.D. and Dr. Victor Pallares, M.D.** for more aggressive treatment.

Heeding the advice, Ms. Reveles consulted Dr. Pallares and complained of lower back pain. After medical examinations, Dr. Pallares noted the following:

724.2  Low back pain
    DDx:
722.10  Lumbar disc herniation
    DDx:
722.10  Bulging lumbar disc

Upon diagnosis, Dr. Reveles scheduled Ms. Reveles for the following pain management session:

**September 9, 2015:**
Caudal Epidural Steroid Injection

3

**June 1, 2015:**
Caudal Epidural Steroid Injection
**June 16, 2015:**
Caudal Epidural Steroid Injection

**June 30, 2015:**
Caudal Epidural Steroid Injection

**July 14, 2015:**
Caudal Epidural Steroid Injection

However, Ms. Reveles continued to experience cervical and lumbar pain. Therefore, she consulted Dr. Vazquez After carefully examining, Dr. Vazquez noted *intervertebral disc disorder displacement, lumbosacral region*. Upon diagnoses, Dr. Vazquez recommended *provocative discogram at L4-5, L5-S1*.

Ms. Reveles still experiences pain on a constant basis. With the ongoing symptomatology, Ms. Reveles must undergo future medical treatment to gain her pre-collision status.

**Total Current and Future Medical Expenses for Rosa Reveles:**

| Description | Expenses |
| --- | --- |
| Current medical costs to date: | $ 48,291.72 |
| Future Medical Costing: | $ 150,000.00 Conservatively |
| **Total** | **$ 198,291.72** |

**OTHER ELEMENTS OF RECOVERY IN A PERSONAL INJURY CLAIM**

As you understand, a claim for personal injury embodies both pecuniary and non-pecuniary damages. In the present suit, the direct evidence will clearly demonstrate that my client is entitled to the following damages.

1.  **Physical Pain**: As to the award of damages for physical pain, a jury is given considerable discretion in awarding amounts appropriate for such damages; there are no objective guidelines to assess the monetary equivalent of pain and suffering resulting from physical injury. *Living Ctrs. of Tex., Inc. v. Penalver*, 217 S.W.3d 44, 54 (Tex.App.-San Antonio 2006, pet. dism'd).

2.  **Mental Anguish**: Award of $200,000.00 for future mental anguish was supported by testimony of plaintiff as to her ongoing inability to do things she formerly did. *Isern v. Watson*, 942 S.W.2d 186 (Tex.App.—Beaumont, 1997, writ denied). The Texas Supreme Court has held

4

that mental anguish damages requires "direct evidence of the nature, duration, or severity of the plaintiffs anguish, thus establishing a substantial disruption in the plaintiffs' daily routine", or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995).

3.    **Physical Impairment/Loss of Enjoyment of Life**:  A broad range of limitations on physical activities have been upheld as compensable physical limitations. Examples of injuries or limitations that have been held to be legally sufficient evidence of physical impairment include difficulty eating and communicating with others; continuing inability to sleep due to sharp pains, plus inability to run and play with children; past inability to walk and future difficulties in running, standing, and climbing; inability to ascend or descend stairs or kneel and difficulty in standing for long periods of time. *Durham Transportation Company, Inc., v. Beettner*, 201 S.W. 3d 859, 864 (Tex.App.—Waco, 2006, pet. denied) (citations omitted).

4.    **Future Medical Expenses:**  To sustain an award of future medical expenses, an injured party must present evidence to establish that, "*in all reasonable probability*", future medical care will be required and establish the reasonable cost of that care. *Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 781 (Tex.App.—Houston [14th Dist.] 1998, pet. denied) (emphasis added). There is no requirement that the injured party establish future medical cost with expert testimony. *Id.* The fact finder may award future medical damages based upon the nature of the injuries, the medical care rendered in the past, and the condition of the injured party at the time of trial. *See Beverly Enterprises v. Leath*, 829 S.W. 2d 382 (Tex.App. – Waco 1992, no writ).

5.    **Disfigurement**: Defined as "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." *Goldman v. Torres*, 161 Tex. 437, 341 S.W.2d 154, 160 (1960); See *Terry v. Espinoza*, 800 S.W.2d 854, 858 (Tex.App.-San Antonio, 1990, writ denied) (A change in appearance, such as a ***stiff neck***, is sufficient evidence to support a **$43,000.00 disfigurement award even though the injured party is not embarrassed by the condition**).

## VII.   EVALUATION

**This case involves obvious liability on behalf of the Insured**.  There is no contributory negligence, and thus, no discount to be taken on the settlement. Due to the Insured's negligence my client was injured.

As a direct result of this collision, my client sustained significant bodily injuries. Due to the nature and severity of his injuries, my Client will require further necessary and reasonable medical care.

My Client seeks fair compensation for her present and future medical expenses, physical injury, pain and suffering, emotional distress, negative impact on the quality of her life, physical impairment, disfigurement, and the increased possibility of recurring injuries that are a direct consequence of the Collision (the "Damages"). The amount we have collectively determined, which would compensate my Client for her Damages, amounts to:

5

### *Ms. Rosa Reveles:  $250,000.00 or the policy limits; whichever is the lesser amount*

My Client believes this amount will be sufficient to pay outstanding medical bills, recommended future treatments, future medical evaluation that will be necessary considering the nature of her injuries and attorney fees.  Upon the realization of his future medical care, little to no compensation will be recovered for my Client's general damages such as pain and suffering, mental anguish, physical impairment, and loss of enjoyment of life. Further, my Client understands that payment for additional Collision related medical services, such as future manifestations of injuries he may have suffered, will have to come from his personal savings or health insurance, if there is any.

## VIII. APPLICABILITY OF STOWERS DOCTRINE

Please remind the Insured that Texas law vests a **clear right** in the Insured to sue the liability carrier if the Insured is damaged because of the carrier's negligence in refusing to settle the claims against the Insured within policy limits.  See *G. A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544, 547-548 (Tex.Comm'nApp. 1929, holding approved); *American Physicians Ins. Exchange vs. Reveles,* 876 S.W.2d 842 (Tex. 1994).  In *Reveles,* the Texas Supreme Court set out a three-part test for determining whether the liability insurance carrier has breached its duty to settle under *Stowers*:  (1) the claim against the insured is within the scope of coverage;  (2) an unconditional demand is made within the policy limits in exchange for a full release of the insured; and, (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Reveles,* 876 S.W.2d at 849 (Tex. 1994).

In this case, liability is significantly more than reasonably clear.  More particularly, the liability factors are adverse to the Insured, and as such, a jury verdict will rule in all reasonable probability against the Insured as to the liability issue.  Thus, my client here and now demand ***$250,000.00 or the policy limits; whichever is the lesser amount*** to fully and finally resolve this matter.  My Client's demand is not only "reasonable" it is also "unconditional," assuming and accepting, without limitation to same, the following criteria:

1.  This demand places no conditions on the acceptance of the settlement which are outside the power of the liability insurer to satisfy. *Insurance Corp. of American v. Webster,* 906 S.W.2d 77 (Tex. App. – Houston [1st Dist.] 1995, writ denied); *Jones vs. Highway Ins. Underwriter,* 253 S.W.2d 1018 (Tex. Civ. App. – Galveston 1952, writ ref'd n.r.e);

2.  In exchange for ***$250,000.00 or the policy limits; whichever is the lesser amount,*** the Client will provide a full release or otherwise fully protect the Insured from further liability exposure as related to any and all of the Client's claims. *American Physicians Ins. Exch. v. Reveles,* 876 S.W.2d 842, 848-49 (Tex. 1994); and,

3.  The Client expressly agree to satisfy all of the hospital liens, and all other legally-enforceable subrogation liens with the amount demanded (i.e. the interests of any and all such potential subrogation lien holders are expressly included within the

amount demanded and will be satisfied there from). *Trinity Universal Ins. Co. v. Bleeker,* 41Tex.S.Ct.J. 670, 1988 WL 169689 (Tex. 1998).

Claimant will require verification of the policy limits in the form of an affidavit and/or the declaration page of the insurance policy.

As I wish to provide the Insured and you, the liability insurance carrier, with a "reasonable time" in which to evaluate my Client's unconditional demand, **please be advised** that the demand for *$250,000.00 or the policy limits; whichever is the lesser amount* will **automatically expire on November 18, 2016.** See *Allstate Ins. Co. v. Kelly,* 680 S.W.2d 595, 608 (Tex.App.-Tyler 1984, writ ref'd n.r.e); Accord *State Farm Lloyds Ins. Co. v. Maldonado,* 935 S.W.2d 805 (on rehearing), *rev'd on other grounds,* 963 S.W.2d 38 (Tex.1998); See *Lacquemont v. Handy,* 876 S.W.2d 932, 935 (Tex. App.–Fort Worth 1994, reh'g denied) (a time demand offer is one which, by its very terms, expires "at a certain time and can no longer be accepted after the expiration of such time").

### IX. CONCLUSION

Be advised that **my Client authorized me to leave this offer open until November 18, 2016.** If after such time, you have not accepted this offer, the offer is revoked and the offer can no longer be accepted. I will then instruct my Client to file suit without any further notice to you. In order to prepare any case for trial, we have to spend a considerable amount of time, effort, energy and money in trial preparation. Although we look forward to being an effective advocate for my client, we are not in the business of spending such capital to thereafter settle the case on the courthouse steps. This is not in our Client's best interest, nor yours! We should informally agree, therefore, that if the settlement offer is not accepted within the allotted time period, then all settlement negotiations shall be terminated and the matter directed to a jury.

I look forward to hearing from you very soon. Should you have any further questions or require anything else to assist you in your evaluation of this claim, please do not hesitate to contact me. Please let me hear from you in writing so we may determine what route this claim will take.

Your professional courtesy with this matter is greatly appreciated.

Very Truly Yours,
**BEGUM LAW GROUP, L.L.C.**

Salvador Romero
sromero@texaslegalgroup.com

*Enclosures*:
1. Medical Reports and Expenses of Rosa Reveles
2. Police Report

7

# EXHIBIT C

COMPANY DIRECT BILL TEXAS PERSONAL AUTO POLICY

# LYNDON SOUTHERN INSURANCE COMPANY

A Stock Company
Jacksonville, FL

added a vehicle

**PRONTO INSURANCE**
P.O. Drawer 3267
Brownsville, TX 78523-3267
Claims:(888)224-7740 Fax:(956)574-9781
Payments: (855) 200-4567

TERM: 6 Months
DECLARATIONS PAGE

POLICY: L-PR9621972-00
PRIOR POLICY:
POLICY EFFECTIVE:  3/02/2015  9:31AM
POLICY EXPIRATION:  9/02/2015
12:01AM STANDARD TIME
AMENDMENT: 2
AMENDMENT EFFECTIVE: 4/02/2015  8:24PM

| INSURED: | Jose Luis Melgoza-Ahiactzin<br>2402 Dennis Ave Apt B<br>Brownsville, TX 78526-4271<br>(956) 371-2055 | AGENT:<br>FR055 | R.E.& Perez Investments LLC<br>5015 Paredes Lane Rd<br>Brownsville, TX 78521<br>(956) 372-1251  Fax:(956) 372-1252 |
|---|---|---|---|

| UNIT | YEAR | MAKE | MODEL | SUB-MODEL | SN | ZIP | TER | SYM | SUR | DRIVER | PTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1999 | PONTIAC | MONTANA | WAG 4X2 | 1GMDX03E7XD182802 | 78521 | 57 | 10 | N | 1 | MM55 | 3 |
| 2 | 1994 | DODGE | RAM WAGON | BUS 4X2 | 2B5WB35Z1RK134906 | 78526 | 57 | 08 | N | 2 | MM35 | |
| 3 | 1998 | DODGE | DURANGO BASE | UTIL 4X4 | 1B4HS28ZXWF147327 | 78526 | 57 | 15 | Y | 2 | MM35 | |

| COVERAGES | LIMITS / DEDUCTIBLES | | Unit 1 | Unit 2 | Unit 3 |
|---|---|---|---|---|---|
| Liability Bodily Injury | 30,000 Per Person 60,000 Per Accident | | 84 | 92 | 111 |
| Liability Property Damage | 25,000 Per Accident | | 52 | 71 | 73 |

|  |  |  | |  |  |
|---|---|---|---|---|---|
| | SUBTOTAL: | | 136 | 163 | 184 |
| | Prorated change in premium | 0.8315 | | | 153 |

Discounts:  MultiCar, Liab.Endors

Policy Fee:       Charges:       Amendment Total     153.00

We agree to make available to you an installment payment plan as described in Rule 14 of the Texas Automobile Rules and Rating Manual, except when an installment payment plan is prohibited by other rule or by statute.

| DRIVER | NAME | AGE | SEX | MARITAL STATUS | SOCIAL SEC. # | LICENSE # | STATE | SR-22 |
|---|---|---|---|---|---|---|---|---|
| 1 | Jose Luis Melgoza-Ahiactzin | 55 | M | M | | 10163016 | MX | N |
| 2 | Wences Sonny Curtiss | 35 | M | M | | 22633461 | TX | N |

If you would like to add drivers or vehicles, contact your agent immediately.

ENDORSEMENTS: 515A; 530A; OACM.551a; 510A; OACM.CrimeIntentRentProp.010
OACM.DelFee.005; OACM.Punitive.018; OACM.AutoTerm.007; OACM.MisRepFraud.009; OACM.CP.013c

| UNIT | LOSS PAYEE / ADDITIONAL INTEREST(S) | AGE / NAME OF EXCLUDED DRIVER(S) |
|---|---|---|
| 1 | Brownsville Motor Company / 7675 Southmost Rd / Brownsville, Tx 78521 | 55 Juana Melgoza Spous<br>37 Gabriela Reyes Spou |

THIS COPY FOR: Insured

Jose Luis Melgoza-Ahiactzin
2402 Dennis Ave Apt B
Brownsville, TX 78526-4271

ORIGINAL PRINT: BY:
4/02/2015
7:27PM



Managing General Agent for:
Lyndon Southern Insurance Company
A Stock Company

Jacksonville, FL

**TEXAS PERSONAL AUTO POLICY**

For claims call 1-888-224-7740
Para reclamos hable al 1-888-224-7740

**Pronto General Agency, Ltd.**
805 Media Luna, Suite 401
Brownsville, TX 78520-8859

---

**IMPORTANT NOTICE**

To obtain information or make a complaint you may
contact your managing general agent at:

**1-855-808-7785**

You may call the Company's toll-free number for
information or to make a complaint at:

**1-800-888-2738**

You may contact the Texas Department of
Insurance to obtain information on Companies,
coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your
premium or about a claim, you should contact the
agent or the company first.  If the dispute is not
resolved, you may contact the Texas Department of
Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not
become a part or condition of the attached
document.

---

01/01/15

**AVISO IMPORTANTE**

Para obtener información o someter una
queja, comunicarse con su agente general:

**1-855-808-7785**

Llamar al número gratuito de la Compañía
para información o someter una queja al:

**1-800-888-2738**

Comunicarse con el Departamento de Seguros
de Texas para obtener información acerca de
compañías, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de
Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O
RECLAMOS:**
Si tiene un desacuerdo concerniente a su
prima o a un reclamo, primero comunicarse
con el agente o la compañía. Si no se resuelve
el desacuerdo, puede entonces comunicarse
Con el Departamento de TDI.

**ANEXE ESTE AVISO A SU POLIZA:**
Este aviso es solo para propósitos de
información y no se convierte en parte o
condición del documento adjunto.

---

AP01TXPRI0115

**ATTENTION:**

YOUR TEXAS PERSONAL AUTO POLICY
QUICK REFERENCE

## DECLARATIONS PAGE
- Name of Insurance Company
- Your Name and Address
- Your Auto or Trailer
- Policy Period
- Coverage and Amounts of Insurance

BEGINNING
ON PAGE

| | |
|---|---|
| AGREEMENT | 2 |
| DEFINITIONS | 2 |

PART A – LIABILITY COVERAGE
INSURING AGREEMENT ......... 2
- Supplementary Payments
- Exclusions
- Limit of Liability
- Out of State Coverage
- Financial Responsibility Required
- Other Insurance

PART B1 – MEDICAL PAYMENTS
COVERAGE ......... 4
- Insuring Agreement
- Exclusions
- Limit of Liability
- Other Insurance
- Assignment of Benefits

PART B2 – PERSONAL INJURY
PROTECTION COVERAGE ......... 4
- Insuring Agreement
- Exclusions
- Limit of Liability
- Other Insurance
- Other Provisions
- Assignment of Benefits

PART C – UNINSURED / UNDERINSURED
MOTORISTS COVERAGE ......... 5
- Insuring Agreement
- Exclusions
- Limit of Liability
- Other Insurance

PART D – COVERAGE FOR DAMAGE
TO YOUR AUTO ......... 6
- Insuring Agreement
- Transportation Expenses
- Exclusions
- Limit of Liability
- Payment of Loss
- No Benefit to Bailee
- Other Insurance
- Appraisal

PART E – DUTIES AFTER AN
ACCIDENT OR LOSS ......... 7
- General Duties
- Additional Duties for Uninsured / Underinsured Motorists Coverage
- Additional Duties for Coverage for Damage to Your Auto

PART F – GENERAL PROVISIONS ......... 8
- Bankruptcy
- Changes
- Legal Action against Us
- Our Right to Recover Payment
- Policy Period and Territory
- Termination
- Transfer of Your Interest in this Policy
- Two or More Auto Policies

AP01TXPRI0115

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:
    **1.** The "named insured" shown in the Declarations, and
    **2.** The spouse if a resident of the same household. If the spouse ceases to be a resident of the same household during the policy period, the spouse will be considered "you" or "your" under this Policy during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a named insured.
**B.** "We", "us" and "our" refer to the Company providing this insurance.
**C.** For purposes of this policy, a private passenger type auto or pickup or van shall be deemed to be owned by a person if leased:
    **1.** Under a written agreement to that person; and
    **2.** For a continuous period of at least six months.
Other words and phrases are defined.  They are boldfaced when used.
**D.** **Family member** means a person who is a resident of your household and related to you by blood, marriage or adoption. This definition includes a ward or foster child who is a resident of your household, and also includes your spouse even when not a resident of your household during a period of separation in contemplation of divorce.
**E.** **Occupying** means in, upon, getting in, on, out or off.
**F.** **Trailer** means a vehicle designed to be pulled by a:
    **1.** Private passenger auto; or
    **2.** Pickup or van.
It also means a farm wagon or farm implement while towed by a vehicle listed in F.1. or F.2. above.
**G.** **Your covered auto** means:
    **1.** Any vehicle shown in the Declarations;
    **2.** **I.** Any of the following types of vehicles on the date you became the owner:
        **a.** a private passenger auto; or
        **b.** a utility type vehicle, with a G.V.W. of 25,000 lbs. or less, of the pickup body, sedan delivery, panel truck, van type and multi-use type, not used for the delivery or transportation of goods, materials or supplies other than samples; unless (1) the delivery of goods, materials or supplies is not the primary usage of the vehicle, or (2) used for farming or ranching.
    **II.** This provision (G.2.) applies only if you:
        **a.** acquire the vehicle during the policy

period; and
        **b.** notify us within 30 days after you become the owner.
If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.
You must notify us of a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.
If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.
    **3.** Any **trailer** you own.
    **4.** Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
        **a.** breakdown;
        **b.** repair;
        **c.** servicing;
        **d.** loss; or
        **e.** destruction.
**H.** **Business day** means a day other than a Saturday, Sunday, or holiday recognized by the state of Texas.

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident. Property damage includes loss of use of the damaged property. Damages include prejudgment interest awarded against the **covered person.** We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
**B.** **Covered person** as used in this Part means:
    **1.** You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**
    **2.** Any person using **your covered auto.**
    **3.** For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
    **4.** For any auto or **trailer**, other than **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or **trailer.**

### SUPPLEMENTARY PAYMENTS
In addition to our limit of liability we will pay on behalf of a **covered person:**
    **1.** Up to $250 for the cost of bail bonds required because of an accident including related traffic law violations. The accident must result in bodily injury or property damage covered under this policy.
    **2.** Premiums on appeal bonds and bonds to release attachments in any suit we defend.
    **3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
    **4.** Up to $50 dollars a day for loss of earnings, but no other income, because of attendance at hearings or trials at our request.
    **5.** Other reasonable expenses incurred at our request.

### EXCLUSIONS
**A.** We do not provide Liability Coverage for any person:
    **1.** Who intentionally causes bodily injury or property damage.
    **2.** For damage to property owned or being transported by that person.
    **3.** **I.** For damage to property:
        **a.** rented to;
        **b.** used by; or
        **c.** in the care of that person.
    **II.** This Exclusion (A.3.I.) does not apply to damage to:
        **a.** residence or private garage; or
        **b.** any of the following type vehicles not owned by or furnished or available for the regular use of you or any **family member:**
          **(1)** private passenger auto;
          **(2)** **trailers**; or
          **(3)** pickups or vans.
    **4.** For bodily injury to an employee of that person during the course of employment. This Exclusion (A.4.) does not apply to bodily injury to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.
    **5.** For that person's liability arising out of the ownership or operation of a vehicle while it is:
        **a.** being used to carry persons for a fee;  this does not apply to a share-the-expense car pool;
        **b.** being used to carry property for a fee; this does not apply to you or any **family member** unless the primary usage of the vehicle is to carry property for a fee; or

AP01TXPRI0115

**c.** rented or leased to another; this does not apply if you or any **family member** lends **your covered auto** to another for reimbursement of operating expenses only.

**6.** While employed or otherwise engaged in the business or occupation of:

**a.** selling;
**b.** repairing;
**c.** servicing;
**d.** storing; or
**e.** parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of **your covered auto** by:

**a.** you;
**b.** any **family member**; or
**c.** any partner, agent or employee of you or any **family member**.

**7.** Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation not described in Exclusion A.6. This Exclusion (A.7.) does not apply to the maintenance or use of a:

**a.** private passenger auto;
**b.** pickup or van that is **your covered auto**; or
**c.** **trailer** used with a vehicle described in 7.a. or 7.b. above.

**8.** Using a vehicle without a reasonable belief that that person is entitled to do so. This Exclusion (8.) does not apply to you or any **family member** while using **your covered auto**.

**9. I.** For bodily injury or property damage for which that person:

**a.** is an insured under a nuclear energy liability policy; or
**b.** would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limits of liability.

**II.** A nuclear energy liability policy is a policy issued by any of the following or their successors:

**a.** American Nuclear Insurers;
**b.** Mutual Atomic Energy Liability Underwriters; or
**c.** Nuclear Insurance Association of Canada.

**B.** We do not provide liability coverage for the ownership, maintenance or use of:

**1.** Any motorized vehicle having fewer than four wheels.
**2.** Any vehicle, other than **your covered auto**, which is:

**a.** owned by you; or
**b.** furnished or available for your regular use.

**3. I.** Any vehicle other than **your covered auto**, which is:

**a.** owned by any **family member**; or
**b.** furnished or available for the regular use of any **family member**.

**II.** However, this exclusion (B.3.) does not apply while maintaining or occupying any vehicle which is:

**a.** owned by any **family member**; or
**b.** furnished or available for the regular use of any **family member**.

**C.** We do not provide Liability Coverage for you or any **family member** for bodily injury to you or any **family member**, except to the extent of the minimum limits of Liability Coverage required by Texas Civil Statutes, Article 6701h, entitled "Texas Motor Vehicle Safety-Responsibility Act."

## LIMIT OF LIABILITY

**A.** If separate limits of liability for bodily injury and property damage liability are shown in the Declarations for this coverage the limit of liability for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for "each accident" for property damage liability is our maximum limit of liability for all damages to all property resulting from any one auto accident. If the limit of liability shown in the Declarations for this coverage is for combined bodily injury and property damage liability, it is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

**1.** Covered persons;
**2.** Claims made;
**3.** Vehicles or premiums shown in the Declarations; or
**4.** Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.

**B.** Any payment under the Uninsured/Underinsured Motorists Coverage or the Personal Injury Protection Coverage of this policy to or for a **covered person** will reduce any amount that person is entitled to recover under this coverage.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

**1.** A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
**2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any liability insurance we provide to a **covered person** for the maintenance or use of a vehicle you do not own shall be excess over any other applicable liability insurance

---

## PART B1 - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:

**1.** Caused by accident; and
**2.** Sustained by a **covered person**.

We will pay only those expenses incurred within three years from the date of the accident.

**B.** Covered person as used in this Part means:

**1.** You or any **family member**:

**a.** while **occupying**; or
**b.** when struck by;

a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

**2.** Any other person while **occupying your covered auto**.

## EXCLUSIONS

We do not provide Medical Payments Coverage for any person for bodily injury:

**1.** Sustained while **occupying** any motorized vehicle having fewer than four wheels.

**2.** Sustained while **occupying your covered auto** when it is:

    **a.** being used to carry persons for a fee; this does not apply to a share-the-expense car pool; or

    **b.** being used to carry property for a fee; this does not apply to your or any **family member** unless the primary usage of the vehicles is to carry property for a fee; or

    **c.** rented or leased to another, this does not apply if you or **any family member** lends **your covered auto** to another for reimbursement or operating expenses only.

**3.** Sustained while **occupying** any vehicle located for use as a residence or premises.

**4.** Occurring during the course of employment if workers' compensation benefits are required or available for the bodily injury.

**5.** Sustained while **occupying** or, when struck by, any vehicle (other than **your covered auto**) which is:

    **a.** owned by you; or

    **b.** furnished or available for your regular use.

**6.** Sustained while **occupying** or, when struck by, any vehicle (other than **your covered auto**) which is:

    **a.** owned by any **family member**; or

    **b.** furnished or available for the regular use of **any family member**.

However, this Exclusion (6.) does not apply to you.

**7.** Sustained while **occupying** a vehicle without a reasonable belief that that person is entitled to do so. This exclusion (7.) does not apply to you or any **family member** while using **your covered auto**.

**8.** Sustained while **occupying** a vehicle when it is being used in the business or occupation of a covered person. This exclusion does not apply to bodily injury sustained while occupying a:

    **a.** private passenger auto;

    **b.** pickup or van that you own; or

    **c.** **trailer** used with a vehicle described in 8.a. or 8.b. above.

**9.** Caused by or as consequence of:

    **a.** discharge of a nuclear weapon (even if accidental);

    **b.** war ( declared or undeclared);

    **c.** civil war;

    **d.** insurrection; or

    **e.** rebellion or revolution.

**10.** From or as a consequence of the following whether controlled or uncontrolled or however caused:

    **a.** nuclear reaction;

    **b.** radiation; or

    **c.** radioactive contamination.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

**1.** **Covered persons**;

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under any Auto Liability or Uninsured/Underinsured Motorists Coverage provided by this policy.

**C.** No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under any Auto Liability or Uninsured/ Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## ASSIGNMENT OF BENEFITS

Payment for medical expenses will be paid directly to a physician or other health care provider if we receive a written assignment signed by the **covered person** to whom such benefits are payable.

## PART B2 - PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

**A.** We will pay Personal Injury Protection benefits because of bodily injury:

Page | 4

**1.** Resulting from a motor vehicle accident; and

**2.** Sustained by a **covered person**.

Our payment will only be for losses or expenses incurred within three years from the date of accident.

**B.** Personal Injury Protection benefits consist of:

**1.** Reasonable expenses incurred for necessary medical and funeral services.

**2.** **I.** Eighty percent of a **covered person's** loss of income from employment. These benefits only apply if, at the time of the accident, the **covered person**:

    **a.** was an income producer; and

    **b.** was in an occupational status.

These benefits do not apply to any loss after the **covered person** dies.

    **II.** Loss of income is the difference between:

    **a.** income which would have been earned had the **covered person** not been injured; and

    **b.** the amount of income actually received from employment during the disability.

    **III.** If the income being earned as of the date of accident is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period (not more than 12 months) preceding the accident shall be used.

**3.** **I.** Reasonable expenses incurred for obtaining services. These services must replace those a **covered person** would normally have performed:

    **a.** without pay;

    **b.** during a period of disability; and

    **c.** for the care and maintenance of the family or household.

    **II.** These benefits apply only if, at the time of the accident, the **covered person**:

    **a.** was not an income producer; and

    **b.** was not in an occupational status.

These benefits do not apply to any loss after the **covered person** dies.

**C.** **Covered person** as used in this part means:

**1.** You or any **family member**:

    **a.** while **occupying**; or

    **b.** when struck by;

a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

**2.** Any other person while **occupying your covered auto** with your permission.

## EXCLUSIONS

We do not provide Personal Injury Protection Coverage for any person for bodily injury sustained:

**1.** In an accident caused intentionally by that person.

**2.** By that person while in the commission of a felony.

**3.** By that person while attempting to elude arrest by a law enforcement official.

**4.** While **occupying**, or when struck by, any motor vehicle (other than **your covered auto**) which is owned by you.

**5.** By a **family member** while **occupying** , or when struck by any motor vehicle (other than **your covered auto**) which is owned by a **family member**.

### LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. **Covered persons;**
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

### OTHER INSURANCE

If there is other Personal Injury Protection Insurance, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible Personal Injury Protection insurance.

### OTHER PROVISIONS

**A.** **Loss payments.** Benefits are payable:

1. Not more frequently than every two weeks; and
2. Within 30 days after satisfactory proof of claim is received.

**B.** **Modification.** The General Provision part of this policy entitled "Our Right to Recover Payment" does not apply to this coverage.

### ASSIGNMENT OF BENEFITS

**C.** Payments for medical expenses will be paid directly to a physician or other health care provider if we receive a written assignment signed by the **covered person** to whom such benefits are payable.

### PART C - UNINSURED / UNDERINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a **covered person**, or **property damage**, caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

Any judgment for damages arising out of a suit brought without our consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

**B.** **Covered person** as used in this Part means:
1. You or any **family member**.
2. Any other person **occupying your covered auto**.
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in B.1. or B.2. above.

**C.** **Property damage** as used in this Part means injury to, destruction of or loss of use of:
1. **Your covered auto**, not including a temporary substitute auto.
2. Any property owned by a person listed in B.1. or B.2. of **covered person** while contained in **your covered auto**.
3. Any property owned by you or any **family member** while contained in any auto not owned, but being operated, by you or any **family member**.

**D.** **I.** **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:
1. To which no liability bond or policy applies at the time of the accident.
2. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
   **a.** you or any **family member;**
   **b.** a vehicle which you or any **family member** are **occupying**; or
   **c.** **your covered auto**.
3. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:
   **a.** denies coverage; or
   **b.** is or becomes insolvent.
4. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either:
   **a.** is not enough to pay the full amount the covered person is legally entitled to recover as damages; or
   **b.** has been reduced by payment of claims to an amount which is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

**II.** However, **uninsured motor vehicle** does not include any vehicle or equipment:
1. Owned by or furnished or available for the regular use of you or any **family member**.
2. Owned or operated by a self- insurer under any applicable motor vehicle law.
3. Owned by any governmental body unless:
   **a.** the operator of the vehicle is uninsured; and
   **b.** there is no statute imposing liability for damage because of bodily injury or **property damage** on the governmental body for an amount not less than the limit of liability for this coverage.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

### EXCLUSIONS

**A.** We do not provide Uninsured /Underinsured Motorists Coverage for any person:

1. For bodily injury sustained while **occupying**, or when struck by, any motor vehicle or trailer of any type owned by you or any **family member** which is not insured for this coverage under this policy.
2. If that person or the legal representative settles the claim without our written consent.
3. When **your covered auto** is:
   **a.** being used to carry persons for a fee; this does not apply to a share-the-expense car pool;
   **b.** being used to carry property for a fee; this does not apply to you or any **family member** unless the primary usage of the vehicle is to carry property for a fee; or
   **c.** rented or leased to another, this does not apply if you or any **family member** lends **your covered auto** to another for reimbursement of operating expenses only.
4. For the first $250 of the amount of damage to the property of that person as the result of any one accident.
5. Using a vehicle without a reasonable belief that the person is entitled to do so. This Exclusion (A.5.) does not apply to you or any **family member** while using **your covered auto**.
6. For bodily injury or **property damage** resulting from the intentional acts of that person.

**B.** This coverage shall not apply directly or indirectly to benefit:
1. Any insurer or self-insurer under any workers' compensation, disability benefits or similar law;
2. Any insurer of property.

## LIMIT OF LIABILITY

**A.**     **I.**   If separate limits of liability for bodily injury and property damage liability are shown in the Declarations for this coverage the limit of liability for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one motor vehicle accident. Subject to this limit for "each person" the limit of liability shown in the Declarations for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one motor vehicle accident. The limit of liability shown in the Declarations for "each accident" for property damage liability is our maximum limit of liability for all damages to all property resulting from any one motor vehicle accident.

If the limit of liability shown in the Declarations for this coverage is for combined bodily injury and property damages liability, it is our maximum limit of liability for all damages resulting from any one motor vehicle accident. This is the most we will pay regardless of the number of:

    **a.**   **Covered persons;**
    **b.**   Claims made;
    **c.**   Policies or bonds applicable;
    **d.**   Vehicles or premiums shown in the Declarations; or
    **e.**   Vehicles involved in the accident.

    **II.**   Subject to this maximum, our limit of liability will be the lesser of:

    **a.**   The difference between the amount of a **covered person's** damages for bodily injury or **property damage** and the amount paid or payable to that **covered person** for such damages, by or on behalf of persons or organizations who may be legally responsible; and

    **b.**   The applicable limit of liability for this coverage.

**B.**   In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

**C.**   Any payment under this coverage to or for a **covered person** will reduce any amount that person is entitled to recover for the same damages under the Liability Coverage of this policy.

## OTHER INSURANCE

If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**A.**   For any **property damage** to which the Coverage for Damage to Your Auto of this policy (or similar coverage from another policy) and this coverage both apply, you may choose the coverage from which damages will be paid. You may recover under both coverages, but only if:

    **1.**   Neither one by itself is sufficient to cover the loss;
    **2.**   You pay the higher deductible amount (but you do not have to pay both deductibles); and
    **3.**   You will not recover more than the actual damages.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.**   We will pay for direct and accidental loss to **your covered auto,** including its equipment less any applicable deductibles shown in the Declarations. However, we will pay for a loss caused by **collision** only if the Declarations indicate that Collision Coverage is provided.

**B.**   **Collision** means the upset or **collision** with another object of **your covered auto.** However, loss caused by the following are not considered collision:

    **1.**   Missiles or falling objects;
    **2.**   Fire;
    **3.**   Theft or larceny;
    **4.**   Explosion or earthquake;
    **5.**   Windstorm;
    **6.**   Hail, water or flood;
    **7.**   Malicious mischief or vandalism;
    **8.**   Riot or civil commotion;
    **9.**   Contact with bird or animal; or
    **10.**   Breakage of glass.

If breakage of glass is caused by a **collision** or if loss is caused by contact with a bird or animal, you may elect to have it considered a loss caused by **collision.**

### TRANSPORTATION EXPENSES

In addition, we will pay up to $20 per day, to a maximum of $600 for transportation expenses incurred by you. This applies only in the event of the total theft of **your covered auto.** We will pay only transportation expenses incurred during the period:

    **1.**   Beginning 48 hours after the theft; and
    **2.**   Ending when **your covered auto** is returned to use or we pay for its loss.

### EXCLUSIONS

We will not pay for:

    **1.**   Loss to **your covered auto** while it is:
      **a.**   being used to carry persons for a fee; this does not apply to share-the-expense car pool; or
      **b.**   being used to carry property for a fee; this does not apply to you or any **family member** unless the primary usage of the vehicle is to carry property for a fee; or
      **c.**   rented or leased to another; this does not apply if you or any **family member** lends **your covered auto** to another for reimbursement or operating expenses only.

    **2.**   Damage due and confined to:
      **a.**   wear and tear;
      **b.**   freezing;
      **c.**   mechanical or electrical breakdown or failure; or
      **d.**   road damage to tires.
This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto.**

    **3.**   Loss due to or as a consequence of:
      **a.**   radioactive contamination;
      **b.**   discharge of a nuclear weapon (even if accidental);
      **c.**   war (declared or undeclared);
      **d.**   civil war;
      **e.**   insurrection; or
      **f.**   rebellion or revolution.

    **4.**   Loss to stereos, radios and other sound reproducing equipment. This Exclusion (4) does not apply if the equipment is permanently installed in **your covered auto.**

    **5.**   Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.

    **6.**   Loss to a camper body or **trailer** not shown in the Declarations. This Exclusion (6.) does not apply to a camper body or **trailer** you:
      **a.**   acquire during the policy period; and
      **b.**   notify us within thirty days after you become the owner.

    **7.**   Loss to any vehicle while used as a temporary substitute for a vehicle you own which is out of normal use because of its:
      a.   breakdown;
      b.   repair;
      c.   servicing;
      d.   loss; or
      e.   destruction.

    **8.**   When in or upon any **trailer,** loss to:
      **a.**   TV antennas;
      **b.**   awnings or cabanas; or
      **c.**   equipment designed to create additional living facilities.

    **9.**   Loss to any of the following or their accessories:

a. citizen band radio;
b. two-way mobile radio;
c. telephone;
d. scanning monitor receiver; or
e. any device or instrument used for detection of radar or other speed measuring equipment. Exclusion 9.a. through 9.d. does not apply if the equipment is permanently installed in the opening of the dash or console of the auto. This opening must be normally used by the auto manufacturer for the installation of radio.

**10.** Loss to any custom furnishing or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:
a. special carpeting and insulation, furniture, bars or television receivers;
b. facilities for cooking and sleeping;
c. height-extending roofs; or
d. custom murals, paintings or other decals or graphics.
This Exclusion (10.) does not apply if the value of the custom furnishings or equipment has been reported to us prior to a loss and included in the premium for this coverage.

**11.** Loss due to or as a consequence of a seizure of **your covered auto** by federal or state law enforcement officers as evidence in a case against you by the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

## LIMIT OF LIABILITY
Our limit of liability for loss will be the lesser of the:
**1.** Actual cash value of the stolen or damaged property;
**2.** Amount necessary to repair or replace the property with other of like kind and quality; or
**3.** Amount stated in the Declarations of this policy.
The most we will pay for loss to equipment listed in Exclusion 4. is $1500. Our payment for loss will be reduced by any applicable deductible shown in the Declarations.
At the mutual agreement of you and us, we will not apply the applicable deductible for a glass loss if the glass is repaired rather than replaced.

## PAYMENT OF LOSS
We pay for loss in money or repair or replace the damaged property. We may, at our expense, return any stolen property to:
**1.** You; or
**2.** The address shown in this policy.
If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property, at an agreed or appraised value.

## NO BENEFIT TO BAILEE
This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE
**A.** If other insurance also covers the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
**B.** For any loss to which Uninsured/Underinsured Motorists Coverage (from this or any other policy) and this coverage both apply, you may choose the coverage from which damages will be paid.
You may  recover under both coverages, but only if:
**1.** Neither one by itself is sufficient to cover the loss;
**2.** You pay the higher deductible amount (but you do not have to pay both deductibles); and
**3.** You will not recover more than the actual damages.

## APPRAISAL
If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
**1.** Pay its chosen appraiser; and
**2.** Bear the expenses of the appraisal and umpire equally.
We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES
**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured person and of any witnesses. If we show that your failure to provide notice prejudices our defense, there is no liability coverage under the policy.
**B.** A person seeking any coverage must:
**1.** Cooperate with us in the investigation, settlement or defense of any claim or suit.
**2.** Promptly send us copies of any notice or legal papers received in connection with the accident or loss.
**3.** Submit, as often as we reasonably require, to physical exams by physicians we select. We will pay for these exams.

Page | 7

**4.** Authorize us to obtain:
a. medical records which are reasonably related to the injury or damage asserted; and
b. other pertinent records.
**5.** When required by us;
a. submit a sworn proof of loss;
b. submit to examination under oath and not in the presence of another person, except bona fide legal counsel, or a parent or guardian.
**C.** Within 15 days after we receive your written notice of claim, we must:
**1.** Acknowledge receipt of the claim. If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.
**2.** Begin any investigation of the claim.
**3.** Specify the information you must provide in accordance with Paragraph B. above.
We may request more information, if during the investigation of the claim such additional information is necessary
**D.** After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed.
**1.** within 15 business days; or
**2.** within 30 days if we have reason to believe the loss resulted from arson.
**E.** If we do not approve payment of your claim or require more time for processing your claim, we must:
**1.** Give the reasons for denying your claim; or
**2.** Give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after our requesting more time.
**F.** In the event of a weather-related catastrophe or major natural disaster, as defined by the Texas Department of Insurance, the claim-handling deadlines as stated above are extended for an additional 15 days.
**G.** Loss payment
**1.** If we notify you that we will pay your claim, or part of your claim, we must pay within 5 **business days** after we notify you.
**2.** If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **business days** after the date you perform the act.
**H.** Notice of Settlement of Liability Claim
**1.** We will notify you in writing of any initial offer to compromise or settle a claim against you under the liability section of this policy. We will give you notice within 10 days after the date the offer is made.
**2.** We will notify you in writing of any settlement of a claim against you under the liability section of this

policy. We will give you notice within 30 days after the date of the settlement.

## ADDITIONAL DUTIES FOR UNINSURED/ UNDERINSURED MOTORISTS COVERAGE
A person seeking Uninsured/ Underinsured Motorists Coverage must also:
   1.   Promptly notify the police if a hit-and-run driver is involved;
   2.   Promptly send us copies of the legal papers if a suit is brought;
   3.   Take reasonable steps after loss, at our expense, to protect damaged property from further loss; and
   4.   Permit us to inspect and appraise the damaged property before its repair or disposal.

## ADDITIONAL DUTIES FOR COVERAGE FOR DAMAGE TO YOUR AUTO
A person seeking Coverage for Damage to Your Auto must also:
   1.   Take reasonable steps after loss, to protect **your covered auto** and its equipment from further loss. We will pay reasonable expenses incurred to do so this;
   2.   Promptly notify the police if **your covered auto** is stolen; and
   3.   Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY
Bankruptcy or insolvency of the **covered person** shall not relieve us of any obligations under this policy.

### CHANGES
**A.**   This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.
**B.**   If a change requires a premium adjustment, we will adjust the premium as of the effective date of change in accordance with our manual rules. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:
   1.   The number, type or use classification of the insured autos;
   2.   Operators using insured autos;
   3.   The place of principal garaging of insured autos; or
   4.   Coverage, deductible or limits.
**C.**   If this policy form is revised to provide more coverage without additional premium charge, we will

automatically provide the additional coverage as of the date the revision is effective.
**D.**   We will compute the premium at the rates in effect on each anniversary date of the policy's inception date for a policy written for more than a full year.

## LEGAL ACTION AGAINST US
**A.**   No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Liability Coverage, no legal action may be brought against us until:
   1.   We agree in writing that the **covered person** has an obligation to pay; or
   2.   The amount of that obligation has been finally determined by judgment after trial.
**B.**   No person or organization has any right under this policy to bring us into any action to determine the liability of a **covered person.**

## OUR RIGHT TO RECOVER PAYMENT
**A.**   If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:
   1.   Whatever is necessary to enable us to exercise our rights; and
   2.   Nothing after loss to prejudice them.
(A release of the insurer of an underinsured motor vehicle does not prejudice our rights.)
However, our rights in this paragraph do not apply under Part D, against any person using **your covered auto** with a reasonable belief that person is entitled to do so.
**B.**   If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
   1.   Hold in trust for us the proceeds of the recovery; and
   2.   Reimburse us to the extent of our payment.
(However, we may not claim the amount recovered from an insurer of any underinsured motor vehicle.)

## POLICY PERIOD AND TERRITORY
**A.**   This Policy applies only to accidents and losses which occur:
   1.   During the policy period as shown in the Declarations; and
   2.   Within the policy territory.
**B.**   The policy territory is:
   1.   The United States of America, its territories or possessions;

   2.   Puerto Rico; or
   3.   Canada.
This Policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

## TERMINATION
**A.   Cancellation.** This policy may be canceled during the policy periods as follows:
   1.   The named insured shown in the Declarations may cancel by:
      **a.**   returning this policy to us; or
      **b.**   giving us advance written notice of the date cancellation is to take effect.
   2.   We may cancel by mailing at least 10 days' notice to the named insured shown in the Declarations at the address shown in this policy.
   3.   After this policy is in effect for 60 days or if this is a renewal or continuation policy, we will cancel only:
      **a.**   if you submit a fraudulent claim; or
      **b.**   for nonpayment of a premium; or
      **c.**   if your driver's license or motor vehicle registration or that of:
         **(1)**   any driver who lives with you; or
         **(2)**   any driver who customarily uses **your covered auto** has been suspended or revoked. However, we will not cancel if you consent to the attachment of an endorsement eliminating coverage when **your covered auto** is being operated by a driver whose license has been suspended or revoked.
   4.   We may not cancel this policy based on the fact that you are an elected official.
**B.   Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than one year, we will have the right not to renew or continue it only at each anniversary of its original effective date. We will not refuse to renew because of a **covered person's** age. We may not refuse to renew this policy based solely on the fact that you are an elected official.
**C.   Automatic Termination.** If, at any time, you obtain other insurance on **your covered auto,** any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

AP01TXPRI0115

**D.  Other Termination Provisions.**

1.  We may deliver any notice instead of mailing it. Proof of mailing any notice shall be sufficient proof of notice.

2.  If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund promptly. The premium refund, if any, will be computed pro rata, subject to the policy minimum premium. However, making or offering to make the refund is not a condition of cancellation.

3.  The effective date of cancellation stated in the notice shall become the end of the policy period.

4.  Any cancellation or restriction of coverage made without your consent will be of no effect, except as

    a.  provided for in this Termination provision under:

        (1)  Cancellation;

        (2)  Non-renewal; or

        (3)  Automatic Termination; or

    b.  required by the Texas Department of Insurance.

---

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.**  Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1.  The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a name insured shown in the Declarations.

2.  The legal representative of the deceased person as if named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

**B.**  Coverage will be provided until the end of the policy period.

**NOTE:** Refer to Medical Payment and/ or Personal Injury Protection Coverage for Assignment of Benefits.

---

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under one policy.

---

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

*W. Dale Bullard*

W. Dale Bullard, President

*Chris Romaine*

Chris Romaine, Secretary

## ENDORSEMENTS

**510A. ADDITIONAL INSURED - LESSOR**

Any liability coverage provided by this policy for **your leased auto** also applies to the lessor named in this endorsement as an additional insured. This insurance is subject to the following additional provisions:

1.  We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

    a.  any **family member;** or

    b.  any other person using **your leased auto** except the lessor or any employee or agent of the lessor.

2.  The lessor is not responsible for paying premiums.

3.  The designation of the lessor as an additional insured shall not operate to increase our limits of liability. Any Coverage for Damage to your Auto provided by this policy for **your leased auto** is subject to the following additional provisions:

1.  Loss of damage under Coverage for Damage to Your Auto shall be paid as interests may appear to you and the lessor shown in this endorsement or as Loss Payee in the Declarations.

2.  This insurance covering the interest of the lessor shall become invalid only because of your fraudulent acts or omissions.

3.  When we pay the lessor, we shall, to the extent of payment, be subrogated to the lessor's rights of recovery. We reserve the right to cancel the policy as permitted by the policy terms. The cancellation shall terminate this agreement as to the lessor's interest. We will give the same advance notice of cancellation to the lessor as we give to the named insured shown in the Declarations.

**Your leased auto** in this endorsement means:

1.  An auto, shown in the Declarations or in this endorsement, which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor; and

2.  Any substitute or replacement auto furnished by the lessor named in this endorsement.

---

**515A. EXCLUSION OF NAMED DRIVER AND PARTIAL REJECTION OF COVERAGES**

**WARNING**
**READ THIS ENDORSEMENT CAREFULLY!**

This acknowledgement and rejection is applicable to all renewals issued by us or any affiliated insurer. However, we must provide a notice with each renewal as follows: "This policy contains named driver exclusion".

You agree that none of the insurance coverages afforded by this policy shall apply while The Excluded Driver is operating **your covered auto** or any other motor vehicle. You further agree that this endorsement will also serve as a rejection of Uninsured/Underinsured Motorists Coverage and Personal Injury Protection Coverage while **your covered auto** or any other motor vehicle is operated by the excluded driver.

**523C. RENTAL REIMBURSEMENT COVERAGE**

The provisions and exclusions that apply to Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement. No deductible applies to this coverage.

When there is a loss to **your covered auto** described in the Declarations for which a specific premium charge indicates that Rental Reimbursement Coverage is afforded, we will reimburse you for expenses you incur to rent a substitute auto. We will pay up to the limits described in the Schedule. This coverage applies only if:

1.  **Your covered auto** is withdrawn from use for more than 24 hours, and

2.  The loss to **your covered auto** is covered under Coverage for Damage to Your Auto of this policy.

When there is a total theft of the auto, the limit of $20 per day (maximum of $600) provided under Coverage For Damage to Your Auto will be supplemented to the extent the limits in the above Schedule exceed that $20 per day limit.

Our payment will be limited to that period of time reasonably required to repair or replace the auto.

**524A. TOWING AND LABOR COSTS COVERAGE**

We will pay towing and labor costs incurred each time **your covered auto** is disabled, up to the amount shown in the Schedule or in the Declarations as applicable to that vehicle. We will only pay for labor performed at the place of disablement. This coverage applies only to **your covered auto** for which a premium charge is shown in the Declarations for Towing and Labor Costs Coverage.

## 530A. LOSS PAYABLE CLAUSE

Loss or damage under Coverage for Damage to Your Auto shall be paid as interest may appear to you and the loss payee shown in the Declarations. This insurance covering the interest of the loss payee shall not become invalid because of your fraudulent acts or omissions, unless the loss results from your conversion, secretion or embezzlement of **your covered auto**. However, we reserve the right to cancel the policy as permitted by policy terms. and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee, we shall, to the extent of the payment, be subrogated to the loss payee's rights of recovery.

## 551A. MEXICO COVERAGE-LIMITED

### WARNING
### READ THIS ENDORSEMENT CAREFULLY!

Auto accidents in Mexico are subject to the laws of Mexico only --NOT the laws of the United States of America. Unlike the United States, the Republic of Mexico considers an auto accident a CRIMINAL OFFENSE as well as a civil matter. In some cases, the coverage under this endorsement may NOT be recognized by Mexican authorities, and the Company may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico. This endorsement does not apply to trips into Mexico that exceed 25 miles from the boundary of the United States of America.

The coverages for **your covered auto** provided by this policy are extended to accidents occurring in Mexico within 25 miles of the United States border. The extension only applies for **infrequent trips** into Mexico that do not exceed ten days at any one time.

**Infrequent trips** means less than five (5) trips in any calendar month

**Additional Exclusion**

We do not provide any coverage.
   1. If **your covered auto** is not principally garaged and used in the United States; and
   2. To any **insured** who does not live in the United States.

**Special Conditions**
   1. **Other Insurance**. The insurance we provide by the endorsement will be excess over any other collectible insurance.

   2. **Losses Payable Under Coverage for Damage to Your Auto**. We will pay losses under Coverage for Damage to Your Auto in the United States, not in Mexico. If **your covered auto** must be repaired in Mexico in order to be driven, we will not pay more than the actual cash value of such loss at the nearest United States point where the repairs can be made.

## CRIMINAL OR INTENTIONAL ACTS – RENTED PROPERTY AND NON-OWNED AUTO ENDORSEMENT
**OACM.CrimeIntentRentProp.010**
The parties agree to the following amendments to the policy:
The following Exclusion Provision is added to Part F – General Provisions:
**PART F – GENERAL PROVISIONS**
**GENERAL EXCLUSIONS**
A.   We do not provide any coverage for any person for bodily injury or property  damage caused by or sustained:
   1.   In an incident caused by or at the direction of that person with the intent to injure person or property.
   2.   While in the commission of a felony.
   3.   While attempting to elude arrest by a law enforcement official.
B.   We will not pay for loss to your **covered auto** or any non-owned auto for damages sustained:
   1.   Due to or caused by a willful or intentional act by or at the direction of you, a **family member** or anyone with your express or implied permission.
   2.   While in the commission of a felony.
   3.   While attempting to elude arrest by a law enforcement official.
Exclusions B.2. and B.3. of this section apply only while **your covered auto** or any non-owned auto is being used by you, a **family member**, or anyone with your express or implied permission.

## 571A. FINANCIAL RESPONSIBILITY CERTIFICATION (SR-22 Filings)

For the additional premium shown in the Declarations of the policy, we certify this policy as proof of financial responsibility as required by the Texas Motor Vehicle Safety Responsibility Act. If this policy is cancelled or terminated, we will give written notice to the Texas Department of Public Safety in accordance with the provisions of the Texas Motor Vehicle Safety Responsibility Act prior to the date of such cancellation or termination.

## 578A. NAMED NON-OWNER COVERAGE
**I.   DEFINITIONS**
The Definitions Section is amended as follows:
   A.   The definition of **your covered auto** is replaced by the following:
**Your covered auto** means a motor vehicle designed for use mainly on public roads or a **trailer** of any type on the date you become the owner.
This provision applies only if you:
   1.   acquire the vehicle during the policy period, and
   2.   ask us to insure it within 30 days after you become the owner. The coverages will only apply for 30 days after you become the owner. Permanent coverage must be afforded under a separate policy.
This insurance does not apply if other insurance applies with respect to newly acquired autos or beyond the expiration date of this policy.
   B.   The definition of **mobile equipment** is added:
This insurance applies to liability for your use of any non-owned land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, and:
   1.   not subject to motor vehicle registration;
   2.   maintained for use exclusively on premises owned by or rented to the owner of such vehicle including the ways immediately adjoining;
   3.   designed for use principally off public roads; or
   4.   designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment which is an auto and not **mobile equipment**.
However, this insurance does not apply to liability arising out of the operation of any air compressors, sand blasting or other building surface cleaning machinery, vacuum cleaners (not street cleaners), welding apparatus, power cranes, ditch or trench diggers, loaders, drills, shovels, geophysical exploration equipment, oil well servicing equipment, tree or other spraying equipment and well drilling machinery attached to, mounted on or forming a part of such vehicle, whether such liability occurs in the course of such operation or subsequent thereto.
**II.   LIABILITY COVERAGE**
Part A is amended as follows:
   A.   The definition of **covered person** is replaced by

AP01TXPRI0115

the following:

**Covered person** means:

    **1.**   You for the maintenance or use of any auto or **trailer** or **mobile equipment**.

    **2.**   For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Coverage.

    **3.**   For any auto or **trailer** or **mobile equipment**, other than **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of you for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or **trailer** or **mobile equipment**.

  **B.**   The Exclusions Section is amended as follows:

    **1.**   Exclusion A.3. is replaced by the following:

For damage to property:

      **a.**   rented to;

      **b.**   used by; or

      **c.**   in the care of,

that person.

This exclusion does not apply to damage to a residence or private garage caused by an auto which is insured under this endorsement.

    **2.**   Exclusion A.5. is deleted.

    **3.**   Exclusions A.6. and A.7. are replaced by the following:

      Maintaining or using any vehicle in the business or occupation of that person. This exclusion does not apply to an auto operated or occupied by you.

    **4.**   Exclusion B.1. is deleted.

    **5.**   Exclusion B.2. is replaced by the following:

Any vehicle, other than **your covered auto**, which is owned by you.

    **6.**   Exclusion B.3. is replaced by the following:

Any vehicle other than **your covered auto**, which is owned by any **family member**. However, this exclusion does not apply to your maintenance or use of any vehicle which is owned by a **family member**.

  **C.**   The Out of State Coverage provision is replaced by the following:

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than where you reside, we will interpret your policy for that accident as follows:

If the state or province has:

    **1.**   A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Schedule or in the Declarations, your policy will provide the higher

    **2.**   A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage. No one will be entitled to duplicate payments for the same elements of loss.

**III.**   **MEDICAL PAYMENTS COVERAGE**

Part B.I. is amended as follows:

  **A.**   The definition of **covered person** is replaced by the following;

**Covered person** means:

    **1.**   You:

      **a.**   while **occupying your covered auto**; or

      **b.**   when struck by

a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

    **2.**   Any other person while **occupying your covered auto**.

  **B.**   The Exclusions Section is amended as follows:

    **1.**   Exclusion 1. and 2. do not apply.

    **2.**   Exclusion 5. is replaced by the following:

Sustained while **occupying** any vehicle, when struck by, any vehicle (other than **your covered auto**) which is owned by you.

    **3.**   Exclusion 6. does not apply.

    **4.**   Exclusion 8. is replaced by the following:

Sustained while **occupying** any vehicle used in the business or occupation of that person. This exclusion does not apply to a vehicle operated or occupied by you.

**IV.**   **UNINSURED/ UNDERINSURED MOTORISTS COVERAGE**

Part C is amended as follows:

  **A.**   The definition of **covered person** is replaced by the following:

**Covered person** means:

    **1.**   You.

    **2.**   Any other person **occupying your covered auto**.

    **3.**   Any person for damages that person is entitled to recover because of bodily injury to which the coverage applies sustained by a person described in 1. or 2. above.

  **B.**   The definition of **property damage** is replaced by the following:

**Property damage** means injury to, destruction of or loss of use of:

    **1.**   **Your covered auto**, not including a temporary substitute auto.

    **2.**   Any property owned by a person listed in 1. or 2. of **covered person** while contained in **your covered auto**.

    **3.**   Any property owned by you while contained in any auto not owned, but being operated, by you.

  **C.**   The definition of **uninsured motor vehicle** is replaced by the following:

**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

    **1.**   To which no liability bond or policy applies at the time of the accident.

    **2.**   Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

      **a.**   you;

      **b.**   a vehicle which you are **occupying**; or

      **c.**   **your covered auto**.

    **3.**   To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

      **a.**   denies coverage; or

      **b.**   is or becomes insolvent.

    **4.**   Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies but its limit of liability:

      **a.**   is not enough to pay the full amount the **covered person** is legally entitled to recover as damages; or

      **b.**   has been reduced by the payment of claims to an amount which is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

However, **uninsured motor vehicle** does not include any vehicle equipment:

    **1.**   Owned by or furnished or available for the regular use of you or any **family member**.

    **2.**   Owned or operated by a self- insurer under any applicable motor vehicle law.

    **3.**   Owned by any government body unless:

      **a.**   the operator of the vehicle is uninsured; and

      **b.**   there is no statute imposing liability for damage because of bodily injury or **property damage** on the governmental body for an amount not less than the limit of liability for this coverage.

    **4.**   Operated on rails or crawler treads.

    **5.**   Designed mainly for use off public roads while not on public roads.

    **6.**   While located for use as a residence or premises.

**PHYSICAL DAMAGE ENDORSEMENT**
**OACM.PhysDam.001**

The parties agree to the following amendment to the policy: The Limit of Liability provision contained in Part D - Coverage for Damage to Your Auto of this policy is deleted and replaced by the following:

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO LIMIT OF LIABILITY

Our limit of liability for **loss** will be the lesser of the following:

   **1.** Actual cash value of the stolen or damaged property, at the time of the **loss**. An adjustment for depreciation and physical condition will be made in determining the actual cash value in the event of a **total loss**;

   **2.** The amount necessary to restore (through repair and/or replacement) the property to its pre-**loss** condition with other property of like kind and quality;

   **3.** The amount you paid for the vehicle in the event of a **total loss**; or

   **4.** The amount stated in the Declarations of the policy.

All claims submitted under Part D - Coverage for Damage to Your Auto will be subject to any applicable deductible shown in the Declarations and reduced by any salvage value if you retain the salvage.

**Custom or additional equipment** is not covered under Part D – Coverage for Damage to Your Auto unless you have reported the value to us prior to the **loss** and paid a premium for the **custom or additional equipment** as shown in the Declarations Page.

**Diminution in Value** is not covered under Part D - Coverage for Damage to Your Auto.

If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the **betterment**. At the mutual agreement of you and us, we will not apply the applicable deductible for a glass **loss** if the glass is repaired rather than replaced.

The following Definitions are added as applied to this endorsement:

### DEFINITIONS

   **1.** **Loss** means sudden, direct and accidental damage.

   **2.** **Total loss** means a **loss** which, in our judgment, is not economically repairable, and includes actual **loss** or disappearance of your auto.

   **3.** **Custom or additional equipment** means any equipment which was not installed at the factory.

   **4.** **Diminution in Value** means the reduction in market or resale value that results from a **loss** after the necessary repairs are made to the vehicle.

   **5.** **Betterment** means an improvement that results in greater value than before the **loss** occurred.

## AUTHORIZED DRIVER ENDORSEMENT
### OACM.AuthDriv.003a

**WARNING: A NAMED DRIVER POLICY DOES NOT PROVIDE COVERAGE FOR INDIVIDUALS RESIDING IN THE INSURED'S HOUSEHOLD THAT ARE NOT NAMED ON THE POLICY.**

The parties agree to the following amendment to the policy:
Part D - Coverage for Damage to Your Auto of this policy is amended by adding the following language as Paragraph C to the Insuring Agreement provision:
**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO INSURING AGREEMENT**
**C.** For coverage to exist under Part D – Coverage for Damage to Your Auto, **your covered auto** must be operated by or in the **control** of an **authorized driver** at the time of the loss. As used in this Part, **authorized driver** shall mean:
    **a.** You; or
    **b.** Any other person listed in the Declarations or added by endorsement during the policy term prior to loss. As used in this Part, **control** shall mean the direct and immediate pre-loss care and custody of **your covered auto.**

## DELIVERY OF PERSONS AND PROPERTY FOR A FEE ENDORSEMENT
### OACM.DelFee.005

The parties agree to the following amendment to this policy:
Exclusion A.5. of Part A - Liability Coverage of this policy is deleted and replaced by the following:
**PART A - LIABILITY COVERAGE EXCLUSIONS**
**A.** We do not provide Liability Coverage for any person:
   **5.** For that person's liability arising out of the ownership or operation of a vehicle while it is:
    **a.** being used to carry persons for a fee; this does not apply to a share-the-expense car pool.
    **b.** being used to carry property for a fee or any compensation, including but not limited to delivery of goods, either on a wholesale or retail basis, such as food, publications, money, or flowers.
    **c.** rented or leased to another or available in any way for public hire; this does not apply if you or any **family member** lends **your covered auto** to another in exchange for reimbursement of operating expenses only.
Exclusion 1 of Part D - Coverage for Damage to Your Auto of this policy is deleted and replaced by the following:

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSIONS

We will not pay for:
   **1.** Loss to **your covered auto** while it is:
    **a.** being used to carry persons for a fee; this does not apply to a share-the-expense car pool.
    **b.** being used to carry property for a fee or any compensation, including but not limited to delivery of goods, either on a wholesale or retail basis, such as food, publications, money, or flowers.
    **c.** rented or leased to another or available in any way for public hire; this does not apply if you or any **family member** lends **your covered auto** to another in exchange for reimbursement of operating expenses only.

## AUTOMATIC TERMINATION ENDORSEMENT
### OACM.AutoTerm.007

The parties agree to the following amendment to the policy:
Part F - General Provisions is revised by adding the following language to C. Automatic Termination:
**PART F - GENERAL PROVISIONS TERMINATION**
**C. Automatic Termination**
If someone other than you or a **family member** who is listed in the Declarations becomes the owner of the auto, coverage for that auto will automatically terminate. The termination will correspond with the time that possession or title is conveyed to the new owner.

## MISREPRESENTATION OR FRAUD ENDORSEMENT
### OACM.MisrepFraud.009

The parties agree to the following amendments to the policy:
The following provision is added:
**PART F - GENERAL PROVISIONS MISREPRESENTATION OR FRAUD**
This policy includes the Declarations Page and the amendments. This policy also includes the application and the endorsements. The statements that you made while you were applying for coverage are representations. To determine your premium and eligibility for coverage under this policy, we relied on the representations that you made when you applied for coverage. If you omitted material facts or made material misrepresentations that are fraudulent, false, misleading or affect the acceptance of the risk by us, we may void this policy. We may void this policy if you engaged in fraudulent conduct while applying for coverage under this policy.
Even following an accident or loss, we may still void this policy for fraud or where there was a material misrepresentation of fact by you while you were applying

for any coverage under this policy, or through any notice of change that you gave under this policy. In such a case, we will not be liable for any claims that would otherwise be covered in the absence of the fraud or material misrepresentation.

If we are not allowed to void this policy, any first-party claims will be reduced by the amount of any other premium owed to us. We reserve the right to recover from you any payments made as a result of your fraud.

Any statements you made or will make in a notification of change to your policy are also considered representations and are subject to the provisions set out above.

**COVERED PERSON ENDORSEMENT**
**OACM.CP.013c**

**WARNING:  A NAMED DRIVER POLICY DOES NOT PROVIDE COVERAGE FOR INDIVIDUALS RESIDING IN THE INSURED'S HOUSEHOLD THAT ARE NOT NAMED ON THE POLICY.**

The parties agree to the following amendment to the policy:
In Part A-Liability Coverage, Insuring Agreement B.
**Covered person** is deleted and replaced by the following:
**PART A - LIABILITY COVERAGE**
**INSURING AGREEMENT**
**B.**   **Covered person** as used in this Part means:
   **1.**   You, for the ownership, maintenance or use of any auto or **trailer**.
   **2.**   Any **family member** or **resident** of your household who is listed in the Declarations or added by endorsement during the policy term prior to loss for the ownership, maintenance or use of any auto or **trailer**.
   **3.**   A person who is not a **family member** or **resident** of your household but is using **your covered auto** with your express or implied permission.
As used in this Part, **resident** shall mean any person living in your household other than you or a **family member**.
In Part A - Liability Coverage, Exclusions, the following  is added as Exclusion D:
**PART A - LIABILITY COVERAGE EXCLUSIONS**
**D.**   None of the liability coverages afforded by this policy shall apply while any person who is not a **covered person** is operating **your covered auto** or any other vehicle.

**EXEMPLARY OR PUNITIVE DAMAGES ENDORSEMENT**
**OACM.Punitive.018**
The parties agree to the following amendments to the policy:
The following exclusions are added:
**PART A – LIABILITY COVERAGE EXCLUSIONS**
We do not provide Liability Coverage for any **exemplary damages** or **punitive damages**
**PART C – UNINSURED/UNDERINSURED MOTORISTS COVRERAGE EXCLUSIONS**
We do not provide Uninsured/Underinsured Motorists Coverage for any **exemplary damages** or **punitive damages**.
The following definition is added as applied to this endorsement:
DEFINITION: **Exemplary damages** means any damages awarded as a penalty or by way of punishment but not for compensatory damages.  **Exemplary damages** are neither economic nor noneconomic damages.  **Exemplary damages** includes **punitive damages**.

**COMPLAINT NOTICE:**
Should any dispute arise about your premiums or about a claim you have filed, contact the agent or write the Company that issued the policy.  If the problem is not resolved, you may also write the Texas Department of Insurance, Consumer Protection (111-1A) P.O. Box 149091, Austin, Texas 78712-9091.  This notice of complaint procedure is for information only and does not become a part or condition of this policy.

**IMPORTANT NOTICE**
**NON-RENEWALS FOR NOT-AT-FAULT ACCIDENTS OR CLAIMS (28 TAC §5.7016)**
We may not use any of the following types of accidents or claims as the only reason for our refusal to renew your personal auto policy:
   **1.**   A claim involving damage from a weather related incident that does not involve a collision (some examples being hail, flood, tornado, winds or hurricanes);
   **2.**   An accident or claim involving damage by contact with an animal or fowl;
   **3.**   An accident or claim involving damage caused by flying gravel, missiles or falling objects; however, if you have three of these losses in any 36-month period, we may increase your deductible to the higher of $250 or the next available deductible increment higher than your present deductible amount, at your renewal date;
   **4.**   A claim under towing and labor protection; however, if you have four claims of this type in any 36-month period, we have the option of eliminating this coverage from your policy;
   **5.**   Any other not-at-fault accident or claim unless there are two or more of these accidents or claims in any  12 month period.
"Refusal to renew" means our refusal to renew your personal auto policy in the same company which originally issued the policy. To the extent of any possible conflict between this notice and the Texas Administrative Code (28 TAC §5.7016), the latter will be controlling.

## LYNDON SOUTHERN INSURANCE COMPANY
### Privacy Policy

You have a relationship with one or more of the following Fortegra Financial Corporation affiliates: *Bankers Life of Louisiana, Life of the South Insurance Company, Insurance Company of the South, Lyndon Southern Insurance Company, and Southern Financial Life Insurance Company.* The trust of our customers is our most valuable asset. In the course of providing products and services to you we will obtain information about you. Your trust in providing this information is safeguarded by keeping nonpublic personal information about our customers in a secure environment and using that information in accordance with this Privacy Policy.

This Privacy Policy generally describes our policy about obtaining and disclosing nonpublic information about you, examples of nonpublic information we collect and the companies with which we may share this information. These examples are for illustrative purposes only and are not intended to be considered a complete description of all information we collect, maintain, or use in our sharing practices. You may have other privacy protection under some State laws. We will comply with the applicable State and Federal laws regarding nonpublic information about you.

*Information we may collect.*

**Customer Information.** Customer information includes identifying information such as your name, address, telephone number, employer, social security number, income, age, and demographic data about you. It also includes information about your transactions with us such as claims history, premiums, and insurance coverage.

**Financial Information.** Financial information is information covered by the Fair Credit Reporting Act and information such as your credit history, credit card usage, income, assets, and loan records. It also includes information from consumer

reporting agencies, public records, and data collection agencies.

**Health Information.** Health information includes medical history provided by doctors, hospitals or other health care providers, other insurance companies, and you. Health information will be collected, as authorized by you, or otherwise permitted by law, as we deem appropriate to determine eligibility for coverage, to process claims, and to prevent fraud.

*What we do with the information we obtain.*

The nonpublic information we may collect as described above may be disclosed, where permitted by law, in order to offer you product and services. Examples of disclosures permitted by law would include disclosures to organizations who provide claims administration, underwriting, audits, investigation or policyholder services. We may use affiliated and nonaffiliated parties to perform these services. Services also include protecting against fraud and companies who maintain software for us. We may also disclose information in response to requests from law enforcement authorities or State insurance authorities.

*Independent Sales Agents and Agents in General.*

Sales agents who represent us are independent, and your independent sales agent may gather and retain customer information, financial information, and/or health information about you. The use and protection of this information by your independent sales agent is your independent sales agent's responsibility, not the responsibility of *Fortegra Financial Corporation or its affiliated companies* If you have questions about how your independent sales agent may use or disclose this information, please contact your independent sales agent.

*Information regarding Former Customers.*

We do not disclose nonpublic personal information about former customers except in accordance with this Privacy Policy.

*Changes to our Privacy Policy*

We reserve the right to modify, change or supplement this Privacy Policy at any time. If we make material changes to this policy, we will provide our customers with a revised notice that describes our new practices.

**Lyndon Southern Insurance Company**
**10151 Deerwood Park Blvd., Building 100**
**Jacksonville, FL 32256**

## CONSUMER BILL OF RIGHTS

### Personal Automobile Insurance

**AVISO:** Este documento es un resumen de sus derechos como asegurado. Usted tiene el derecho a llamar a su compañía y pedir una copia de estos derechos en español.

### What is the Bill of Rights?

This Bill of Rights is a summary of your rights and does not become a part of your policy. The Texas Department of Insurance (TDI) adopted the Bill of Rights and requires insurance companies to provide you a copy when they issue your policy.

Texas law gives you certain rights regarding your automobile insurance. This Bill of Rights identifies your rights specified by rule or by state statute, but it does not include all your rights. Also, some exceptions to the rights are not listed here. If your agent, company, or adjuster tells you that one of these rights does not apply to you, contact TDI Consumer Protection Program at 1-800-252-3439 (512-804-5140 in Austin) by mail at Mail Code 111-1A, P.O. Box 149091, Austin, TX 78714-9091, or by email at ConsumerProtection@tdi.state.tx.us.  For a list of the specific law(s) and/or rule(s) summarized in each item of this Bill of Rights, or if you have questions or comments, contact the Office of Public Insurance Counsel (OPIC) at 1-877-611-6742, by mail at 333 Guadalupe, Suite 3-120, Austin, TX 78701 or visit the OPIC website at www.opic.state.tx.us.

This Bill of Rights does not address your responsibilities.  Your responsibilities concerning your insurance can be found in your policy. Failure to meet your obligations may affect your rights.

### Getting Information from the Department of Insurance and your Insurance Company

**1.   INFORMATION FROM TDI.** You have the right to call TDI free of charge at 1-800-252-3439 or 512-804-5140 in Austin to learn more about:

- your rights as an insurance consumer;
- the license status of an insurance company or agent;
- the financial condition of an insurance company;
- the complaint ratio and type of consumer complaints filed against an insurance company;
- use of credit information by insurance companies, including which insurance companies use it and access to each company's credit scoring model;
- an insurance company's rates filed with the state;
- an insurance company's underwriting guidelines (subject to exemptions in the Public Information Act, also known as the Open Records Act;  and
- other consumer concerns.

You can also find some of this information on the TDI website at www.tdi.texas.gov.

At www.helpinsure.com, Texans can find more detailed information on their current and prospective insurers.  TDI, in conjunction with OPIC, maintains this website to help Texans shop for residential property insurance and personal automobile insurance.  For companies writing in Texas that are in the top 25 groups nationally, the site also includes:

- a list of insurers by county and/or ZIP code;
- detailed contact information for each insurer;
- sample rates and a brief history of increases and or decreases in the rates;
- policy form comparisons;
- a list of policy forms, exclusions, endorsements, and discounts offered by each insurer;  and
- non-confidential disciplinary actions against each insurer.

**2.   INFORMATION FROM YOUR INSURANCE COMPANY.** You have the right to a toll-free number to call your insurance company free of charge with questions or complaints.   You can find this number on a notice accompanying your policy.  This requirement does not apply to small insurance companies.

### WHAT YOU SHOULD KNOW BEFORE YOU BUY INSURANCE

**3.   PROHIBITED STATEMENTS.** Your insurance company or agent is prohibited from making false, misleading or deceptive statements to you relating to insurance.

**4.   EXCESS LIMITS.** An insurer or agent cannot require you to purchase liability limits greater than the minimum limits required by law or require you to purchase other types of coverage as a condition of offering or renewing insurance. The current minimum limits are 30/60/25, which references the maximum amount the policy will pay for each accident. $30,000 per person for a bodily injury claim/ $60,000 for all bodily injury claims combined/ $25,000 for property damage claims per accident.
**NOTE:** Texas law requires that automobile insurance policies include personal injury protection (PIP) and uninsured motorist protection (UM/UIM) unless you reject the coverages in writing. Also as a condition of your automobile loan, your lender may require you to purchase other types of coverage, such as collision or comprehensive coverage, to pay for damage to your vehicle.

**5.   CREDIT INFORMATION.** An insurance company cannot deny you insurance solely on the basis of credit information.   Insurers who use credit information must also consider other underwriting factors independent of credit information  when deciding whether to offer coverage.  (For additional information see the section of this Bill of Rights entitled *What you should know about insurance companies' use of credit information*).

**6.   SAFETY NET.** You have the right to buy minimum liability, personal injury protection, and uninsured motorist insurance through the Texas Automobile Insurance Plan Association, also known as TAIPA, if you have been denied coverage by two insurance companies.

**7.   PAYMENT PLANS.** You have the right to pay your automobile insurance premium in installments. Insurance companies may charge a fee for each installment.

**8.   ELECTRONIC PAYMENTS** If you authorize your insurer to withdraw your premium payments directly from your financial institution, your insurer cannot increase the amount withdrawn unless:

- the insurer notifies you by U.S. mail of the increase in premium increase at least 30 days prior to its effective date; and
- you do not notify the insurer that you object to the increase  in the  amount  to be  withdrawn  at   least five days prior to the increase.

The notice provided by the insurer must include a toll-free number, a mailing address and an email address (if applicable), through which you can contact the insurer to object to the increase.

**NOTE:**  This does not apply to premium increases specifically scheduled in the original policy, to increases based on policy changes you request, or to an increase  that is less than $10 or 10 percent of the previous  month's payment.

**9.   NOTICE OF REDUCED COVERAGE.** If an Insurer uses an endorsement to reduce the amount of coverage provided by your policy; the insurer must give you a written explanation of the change made by the endorsement.  The insurer must provide the explanation not later than the 30th day before the effective date of the new or renewal policy. An insurance company cannot reduce coverage during the policy period unless you request the change. If you request the change, the company is not required to provide notice.

**10.   EXPLANATION OF DENIAL.** Upon request,

You have the right to be told in writing why you have been denied coverage. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

**NOTE:** The obligation to provide a written explanation applies to insurance companies directly. An independent agent does not have a specific duty to quote the lowest possible rate to a consumer or to provide a written statement explaining why the agent did not offer the consumer the lowest possible rate.

**11. RATE DIFFERENTIAL WITHIN A COUNTY.** If an insurance company subdivides a county for the purpose of charging different rates for each subdivision, the difference between the lowest and the highest rate cannot exceed 15% unless actuarially justified.

**12. RIGHT TO PRIVACY.** You have the right to prevent an insurance company, agent, adjuster or financial institution from disclosing your personal financial information to companies that are not affiliated with the insurance company or financial institution. Some examples are income, social security number, credit history and premium payment history.

If you apply for a policy, the insurance company or financial institution must notify you if it intends to share financial information about you and give you at least 30 days to refuse. This refusal is called "opting out".

If you buy a policy, the insurance company or financial institution must tell you what information it collects about you and whether it intends to share any of the information, and give you at least 30 days to opt out. Agents and adjusters who intend to share your information with anyone other than the insurance company or financial institution must give you similar notices. You can opt out at any time. Your decision to opt out remains in effect unless you revoke it. These protections do not apply to information:

- publicly available elsewhere;
- insurance companies or financial institutions are required by law to disclose; or
- insurance companies or financial institutions must share in order to conduct ordinary business activities.

**What You Should Know About Cancellation and Nonrenewal**

**Cancellation** means that <u>before the end</u> of the policy period the insurance company:

- terminates the policy;
- reduces or restricts coverage under the

policy; or

- refuses to provide additional coverage to which you are entitled under the policy.

**Refusal to renew** and **nonrenewal** mean the policy terminates <u>at the end</u> of the policy period.

The **policy period** is shown on the declarations page at the front of your policy.

**13. LIMITATION ON CANCELLATION.** After your initial policy with your company has been in effect for 60 days, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;
- you file a fraudulent claim;
- your driver's license or car registration is revoked or suspended;
- the driver's license of any household resident or person who customarily drives a covered auto is suspended or revoked. If you agree to exclude coverage for that person, the insurance company cannot cancel your policy for this reason; or
- TDI determines continuation of the policy would result in violation of insurance laws.

**14. NOTICE OF CANCELLATION.** To cancel your policy, your insurance company must mail notice at least 10 days prior to cancellation. Your policy may provide for even greater notice.

**15. POLICY HOLDER'S RIGHT TO CANCEL.** You have the right to cancel your policy at any time and receive a refund of the remaining premium. The refund will be paid to you unless your premium was financed through a premium finance company. In that case, the refund will be paid to the premium finance company to reduce the amount you owe on your loan.

**16. CHANGE IN MARITAL STATUS.** If your marital status changes, you have the right to continue your insurance coverage. You have a right to a new policy in your name that has coverages which most nearly approximate the coverages of your prior policy, including the same expiration date. The insurance company cannot date the new policy so that a gap in coverage occurs.

**17. NOT-AT-FAULT CLAIMS.** Your insurance company cannot refuse to renew your policy solely because of any of the following types of claims:

- claims involving damage from a weather related incident that does not involve a collision, like damage from hail, wind or flood;
- accidents or claims involving damage by contact with animals or fowls;

- accidents or claims involving damage caused by flying gravel or flying objects; however, if you have three of these claims in a three year period, the insurance company may raise your deductible on your next renewal date;
- towing and labor claims; however, once you have made four of these claims in a three year period, the company may eliminate this coverage from your policy on your next renewal date; and
- any other accident or claim that was not your fault unless you have two or more of these claims or accidents in a one year period.

**18. USE OF AGE TO NONRENEW.** Your insurance company cannot refuse to renew your policy based solely on the age of any person covered by the policy. This includes placing you in a higher prices company or requiring a named driver exclusion for a teenager who reaches driving age.

**19. USE OF CREDIT INFORMATION TO NONRENEW.** An insurance company cannot refuse to renew your policy solely on the basis of credit information. Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to renew coverage. (For additional information see the section of this Bill of Rights entitled *What you should know about insurance companies use of credit information*).

**20. LENGTH OF POLICY TERM.** If the term of you insurance policy is less than one year, your insurance company must renew that policy until it has been in effect for one year. Your insurance company may only refuse to renew your policy effective on the anniversary of the policy's original effective date. For instance, if your policy was originally effective on January 1, Year 1, the insurance company must renew your policy to provide coverage until January1, Year 2, and thereafter, may only refuse to renew your policy effective January 1 of any subsequent year.

**21. NOTICE OF NONRENEWAL.** If the insurance company does not mail you notice of nonrenewal at least 30 days before your policy expires; you have the right to require the insurance company to renew your policy.

**22. EXPLANATION OF CANCELLATION OR NONRENEWAL.** Upon request, you have the right to a written explanation of an insurance company's decision to cancel or non-renew your policy. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

**What You Should Know When You File a Claim.**

**23. FAIR TREATMENT.** You have the right to be treated fairly and honestly when you make a claim. If you believe an insurance company has treated you unfairly, call the Department of Insurance at 1-800-252-3439 (512-804-5140 in Austin) or download a complaint form from the TDI website at http://www.tdi.texas.gov. You can complete a complaint form on-line via the Internet or fax it to TDI at 512-475-1771.

**24. SETTLEMENT OFFER.** You have the right to reject any settlement amount, including any unfair valuation, offered by the insurance company. If you reject a settlement offer your options include continuing to negotiate with the insurer or pursuing legal remedies, such as mediation, arbitration, or filing a lawsuit.

**25. EXPLANATION OF CLAIM DENIAL.** Your insurance company must tell you in writing why your claim or part of your claim was denied.

**26. TIMEFRAMES FOR CLAIM PROCESSING.** When you file a claim in your own policy, you have the right to have your claim processed and paid promptly. If the insurance company fails to meet required claims processing and payments deadlines, you have the right to collect 18% annual interest and attorney's fees in addition to your claim amount.

Generally, within **15 calendar days**, your insurance company must acknowledge receipt of your claim and request additional information reasonably related to your claim. Within **15 business days** after receipt of all requested information, the company must approve or deny your claim in writing. The law allows the insurance company to extend this deadline up to **45 days** if it notifies you that more time is needed and tells you why.

After notifying you that your claim is approved, your insurance company must pay the claim **within five business days.**

If your claim results from a weather-related catastrophe or other major natural disaster as defined by TDI. These claims handling deadlines are extended for an additional 15 days.

**27. CHOICE OF REPAIR SHOP AND REPLACEMENT PARTS.** You have the right to choose the repair shop and replacement parts for your vehicle. An insurance company may not specify the brand, type, kind, age, vendor, supplier, or condition of parts or products used to repair your automobile. The insurance company must provide you notice of the above requirements as follows:

- claims submitted by telephone – written notice within three business days or immediate verbal notice, followed by written notice within 15 days;

- claims submitted in person – immediate written notice at the time you present your vehicle to an insurer or an insurance adjuster or other person in connection with a claim for damage repair;

- claims submitted in writing - written notice must be provided within 3 business days of the insurance company's receipt of the notice.

**28. DEDUCTIBLE RECOVERY.** If another person is liable for damage to your auto and you filed a claim and paid a deductible on your own policy, your insurance company must make a reasonable and diligent effort to recover the deductible from that person within twelve months from the date your claim is paid. If not, your company must:

- authorize you, at least 90 days prior to the expiration of the statute of limitations, to pursue your own collection efforts, or

- refund your deductible.

**29. NOTICE OF LIABILITY CLAIM SETTLEMENT.** Your insurance company must notify you if it intends to pay a liability claim against your policy. The company must notify you in writing of an initial offer to compromise or settle a claim against you no later than the 10th day after the date the offer is made. The company must notify you in writing of any settlement of a claim against you no later than the 30th day after the date of the settlement.

**30. INFORMATION NOT REQUIRED FOR CLAIM PROCESSING.** You have the right to refuse to provide your insurance company with information that does not relate to your claim. In addition, you may refuse to provide your federal income tax records unless your insurer gets a court order or your claim involves lost income or a fire loss.

**What You Should Know About Prohibited Discrimination**

**31. PROTECTED CLASSES.** An insurance company cannot discriminate against you by refusing to insure you; limiting the amount, extent, or kind of coverage available to you; charging you a different rate for the same coverage or refusing to renew your policy:

- because of race, color, religion, or national origin; or

- unless justified by actual or anticipated loss experience, because of age, gender, marital status, geographic location, or disability or partial disability.

**32. UNDERWRITING GUIDELINES.** Underwriting guidelines may not be unfairly discriminatory

and must be based on sound actuarial principles.

**33. EQUAL TREATMENT.** Unless based on sound actuarial principles, an insurance company may not treat you differently from other individuals of the same class and essentially the same hazard. If you sustain economic damages as a result of such unfair discrimination, you have the right to sue that insurance company in Travis County District Court.

If your suit prevails, you may recover economic damages, court costs and attorney and necessary expert witness fees. If the court finds the insurance company knowingly violated your rights, it may award up to an additional $25,000 per claimant.

You must bring the suit on or before the second anniversary of the date you were denied insurance or the unfair act occurred or the date you reasonably should have discovered the occurrence of the unfair act. If the court determines your suit was groundless and you brought the lawsuit in bad faith, or brought it for the purposes of harassment, you will be required to pay the insurance company's court costs and attorney fees.

**What You Should Know About Insurance Companies' Use of Credit Information.**

**34. REQUIRED DISCLOSURE.** If an insurance company uses credit information to make underwriting or rating decisions, the company must provide you a disclosure statement within 10 days after receiving your completed application for insurance.

The disclosure indicates whether the insurer will obtain and use your credit information and lists your specific legal rights, including:

- credit information insurance companies cannot use against you;

- how you can get reasonable exceptions if your insurer is required to make to its use of credit information if certain life events, such as divorce, death of a close family member, or identity theft, hurt your credit;

- the notice* an insurer must send you when making a credit-based decision that harms your ability to get or keep insurance or requires you to pay a higher premium; and

- how you can dispute credit information and require an insurer to re-rate your policy if the rate was increased because of inaccurate or unverifiable credit information.

\* The notice must include a description of up to four primary factors that influenced the action taken by the insurer.

AP01TXPRI0115

Page | 17

Insurers must use the disclosure form (CD-1) adopted by the Commissioner or an equivalent disclosure form filed prior to use with TDI. The CD-1 is available at www.tdi.texas.gov/forms/pcpersonal/pc328crdtds.pdf or by calling 1-800-252-3439. Additional information regarding insurers' use of credit information is available at www.tdi.texas.gov/credit.html.

### What You Should Know About Enforcing Your Rights

**35. FILING COMPLAINTS.** You have the right to complain to TDI about any insurance company and or insurance matter and to receive a prompt investigation and response to your complaint. To do so, you should:

- call TDI's *Consumer Help Line* at 1-800-252-3439, (512-804-5140 in Austin) for service in both English and Spanish;
- write to the Texas Department of Insurance, Consumer Protection, Mail Code 111-1A, P.O. Box 149091, Austin, Texas 78714-9091;
- e-mail TDI at ConsumerProtection@tdi.texas.gov
- fax your complaint to (512) 475-1771;
- download or complete a complaint form on line from the TDI website at www.tdi.texas.gov; or
- call the TDI Publications/Complaint Form order line (24 hours) at 1-800-599-SHOP (7467), (512-305-7211 in Austin). The order line is available 24 hours a day, seven days a week.

**NOTE:** TDI offers interpreter services and publications in alternate formats. Persons needing more information in alternate layouts or languages can call the *TDI Consumer Help Line* listed above.

**36. RIGHT TO SUE:** If an insurance company violates your rights, you may be able to sue that company in court, including small claims court, with or without an attorney.

**37. BURDEN OF PROOF.** If you sue to recover under your insurance policy, the insurance company has the burden of proof as to any application of exclusion in the policy and any exception to or other avoidance of coverage claimed by the insurer.

**38. REQUESTING NEW RULES.** You have the right to ask in writing that TDI make or change rules on any automobile insurance issue that concerns you. Send your written request to: Texas Department of Insurance, Attn: Commissioner (113-2A), P.O. Box 149104, Austin, TX 78714-9104.

# PRONTO GENERAL AGENCY, LTD.
## PRIVACY POLICY

This Privacy Policy statement is limited to your relationship with **Pronto General Agency, Ltd.** Your relationship with other financial service providers and how they use the information you provide to them will be subject to and governed by their respective policies.

Our privacy policy is specifically designed for the protection of our consumer, in other words individuals obtaining a financial product for household purposes. **Pronto General Agency, Ltd.** recognizes the importance you place on your privacy and the confidentiality of your financial information. We think it is important for you to be informed of the policies we have in place to safeguard your privacy.

**Information Collection:** We collect nonpublic personal information about you from the following sources:

- Information we receive from your applications or other forms;
- Information about your transactions with us, our affiliates, or others; and
- Information we receive from consumer reporting agencies.

**Information disclosed:** We may disclose some or all of the information that we collect.

**Parties Who May Receive Information:** We may disclose the information about our customers and former customers to companies that perform marketing services on our behalf, to other financial institutions with whom we have joint marketing agreements, to third parties for certain purposes such as servicing customer relationships, fraud and risk management, and responding to transaction requests, and to third party companies in order to offer or support a product or service that we provide to you.

We may make disclosures to other non-affiliated third parties as permitted by law. This includes information to consumer reporting agencies for consumer reporting purposes, law enforcement agencies, or other third parties which prevent or investigate suspected fraudulent activities.

**Security:** We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Changes to Privacy Policy:** We reserve the right to amend, change, modify or supplement this Privacy Policy at any time. If we make material amendments, changes, modifications or supplements to this Privacy Policy, we will provide our current customers with a revised notice evidencing such action. We will send you an annual notice of this Privacy Policy if and to the extent required by applicable law or regulation.

**Reporting Information:** If you believe any information we have about you or your personal relationship with us is incorrect, please notify us at

Legal Department
**Pronto General Agency, Ltd.**
805 Media Luna, Suite 401
Brownsville, TX 78520

Or call 1-888-224-7740. We will take prompt action in making appropriate corrections.

**WARNING:**

**A NAMED DRIVER POLICY DOES NOT PROVIDE COVERAGE FOR INDIVIDUALS RESIDING IN THE INSURED'S HOUSEHOLD THAT ARE NOT NAMED ON THE POLICY.**

AP01TXPRI0115

# EXHIBIT D

CAUSE NO. _____

| | | |
|---|---|---|
| LYNDON SOUTHERN | § | IN THE DISTRICT COURT |
| INSURANCE COMPANY | § | |
| | § | |
| vs. | § | _____ JUDICIAL DISTRICT |
| | § | |
| ROSA GLORIA REVELES and | § | |
| SONNY CURTISS WENCES | § | CAMERON COUNTY, TEXAS |

## AFFIDAVIT OF JOSE LUIS MELGOZA-AHIACTZIN

| | |
|---|---|
| STATE OF NEW YORK | § |
| | § |
| COUNTY OF WESTCHESTER | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jose Luis Melgoza-Ahiactzin, known to me, who first being duly sworn upon oath, stated as follows:

My name is Jose Luis Melgoza-Ahiactzin. I am over the age of twenty-one (21), of sound mind, and am fully competent to make this Affidavit. The statements contained in this Affidavit are based upon my personal knowledge and are true and correct.

I am presently living in The Bronx, City of New York, State of New York, but I may be moving soon to North Carolina.

In March 2015, I purchased a personal auto policy from Lyndon Southern Insurance Company, No. L-PR9621972-00, through my independent insurance agent, R.E.& Perez Investments, LLC in Brownsville, Texas. The policy insured two vehicles I owned at that time, including a 1999 Pontiac Montana and a 1994 Dodge Ram truck.

In or about April 1, 2015, a friend of mine, Sonny Wences, asked me to add his 1998 Dodge Durango to my policy. Because Sonny was my friend, I agreed to do so.

I am not in any way related to Sonny Wences. I did not at any time own or have any ownership interest in Sonny's 1998 Dodge Durango. I did not pay any money towards the purchase of the vehicle, nor was I ever a signatory to any loan on the vehicle. The 1998 Dodge Durango was not and has never been titled in my name. The 1998 Dodge Durango was never garaged at my house, and I never operated the vehicle. I added the 1998 Dodge Durango to my policy only as a favor to Sonny. I had no interest in the vehicle, nor was I in any way responsible for the operation, maintenance or use of the vehicle.

Signed this ___13___ day of ___SEPTEMBER___, 2018

_José Luis Melgoza Ahiactzin_
Jose Luis Melgoza-Ahiactzin

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this ___13___ day of ___SEPTEMBER___, 2018, to certify which, witness my hand and seal of office.

NOTARY PUBLIC, STATE OF NEW YORK

VELMA SAUNDERS
Notary Public, State of New York
No. 01SA6116029
Qualified in Westchester County
Commission Expires September 20, 20__

**AFFIDAVIT OF JOSE LUIS MELGOZA-AHIACTZIN – Page 2**

CAUSE NO. _____

| | | |
|---|---|---|
| LYNDON SOUTHERN | § | IN THE DISTRICT COURT |
| INSURANCE COMPANY | § | |
| | § | |
| vs. | § | _____ JUDICIAL DISTRICT |
| | § | |
| ROSA GLORIA REVELES and | § | |
| SONNY CURTISS WENCES | § | CAMERON COUNTY, TEXAS |

### AFFIDAVIT OF JOSE LUIS MELGOZA-AHIACTZIN
### DECLARACIÓN JURADA DE JOSE LUIS MELGOZA-AHIACTZIN

EL ESTADO DE NUEVA YORK   §
                           §
CONDADO DE WESTCHESTER   §

ANTES DE MÍ, la autoridad infrascripto, en este día apareció personalmente Jose Luis Melgoza-Ahiactzin, conocido por mí, quien después de ser puesto bajo juramento, declaró lo siguiente:

"Mi nombre es Jose Luis Melgoza-Ahiactzin. Tengo más de veintiún (21) años de edad, soy de mente sana y soy totalmente competente para hacer esta declaración jurada. Las declaraciones contenidas en esta declaración jurada se basan en mi conocimiento personal y son verdaderas y correctas.

"Actualmente vivo en el Bronx, ciudad de Nueva York, estado de Nueva York, pero es posible que pronto me mude a Carolina del Norte.

"En Marzo de 2015, compré una póliza de automóvil personal de Lyndon Southern Insurance Company, No. L-PR9621972-00, a través de mi agente de seguros independiente, R.E. & Perez Investments, LLC en Brownsville, Texas. La póliza aseguraba dos vehículos que poseía en ese momento, incluyendo un Pontiac Montana 1999 y un camión Dodge Ram 1994.

"Aproximadamente el primero de abril de 2015, un amigo mío, Sonny Wences, me pidió que añadiera su Dodge Durango 1998 a mi póliza. Como Sonny era mi amigo, acepté hacerlo.

"No estoy relacionado de ninguna manera con Sonny Wences. No poseí en ningún momento ni tuve ningún interés del propietario en el Dodge Durango 1998 de Sonny. No pagué ningún dinero para la compra del vehículo, ni fui signatario de ningún préstamo en el vehículo. El Dodge Durango 1998 no fue y nunca ha sido titulado en mi nombre. El Dodge Durango 1998 nunca fue estacionado en mi casa,

y nunca manejé el vehículo.  Agregué el Dodge Durango 1998 a mi póliza solo como un favor para Sonny.  No tenía ningún interés en el vehículo, ni era de ninguna manera responsable por la operación, mantenimiento o uso del vehículo."

Firmado este ____13____ día de _SEPTEMBER_, 2018

_Jose Luis Melgoza Ahiactzin_
Jose Luis Melgoza-Ahiactzin

SUSCRITO Y JURADO A ANTES DE MÍ, en este ___13___ día de _SEPTEMBER_, 2018, para certificar cuál, testigo de mi mano y sello de oficina.

_____
NOTARIO PÚBLICO, ESTADO DE NUEVA YORK

VELMA SAUNDERS
Notary Public, State of New York
No. 01SA6116029
Qualified in Westchester County
Commission Expires September 20, 2020

# EXHIBIT E

NO. 2016-DCL-08210

| | | |
|---|---|---|
| ROSA GLORIA REVELES | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | 197th JUDICIAL DISTRICT |
| | § | |
| SONNY CURTISS WENCES | § | |
| and SAUL WENCES | § | |
| Defendants. | § | CAMERON COUNTY, TEXAS |

## FINAL DEFAULT JUDGMENT
## AS TO DEFENDANT SAUL WENCES

The hearing on this cause was held on May 3, 2017. Plaintiff, Rosa Gloria Reveles

appeared. Defendant, Saul Wences, although duly cited to appear by filing an answer herein, failed

to file an answer within the time allowed by law.

1.      On the claim of Negligence, the court finds in favor of Plaintiff, Rosa Gloria

Reveles, and against Saul Wences.

2.      The Court finds and awards economic and actual damages against Defendant in

favor of the Plaintiff Rosa Gloria Reveles in the amount of $_83,291. 72_____.00

(_____Dollars).

| | | | |
|---|---|---|---|
| a. | Plaintiff's Past Medical Expenses: | | $ 48,291.72 |
| | i. South Texas Clinic of Chiropractic | $ 3,700.00 | |
| | ii. LV Imaging | $ 2,250.00 | |
| | iii. Hammami Imaging Associates | $ 600.00 | |
| | iv. Victor A. Pallares, MD | $41,261.72 | |
| | v. Jones Dones-Vasquez, MD PA | $ 480.00 | |
| b. | Plaintiff's Future Medical Expenses: | | $ 5,000.00 |
| c. | Plaintiff's Past Pain & Suffering: | | $ 5,000.00 |
| d. | Plaintiff's Future Pain & Suffering: | | $ 5,000.00 |
| e. | Plaintiff's Past Physical Impairment: | | $ 5,000.00 |
| f. | Plaintiff's Future Physical Impairment: | | $ 5,000.00 |

     g.   Plaintiff's Past Mental Anguish:          $ _5,000.00_

     h.   Plaintiff's Future Mental Anguish:     $ _5,000.00_

4.     Plaintiff, Rosa Gloria Reveles, is entitled to pre-judgment interest on $_____

_83,291.72_____, at the rate of 5.0% per annum.

5.     Pursuant to Texas Rules of Civil Procedure Rule 131, Plaintiff, Rosa Gloria Reveles is entitled to all costs incurred during trial that are listed within the Cameron County Clerk's Civil Fee Ledger.

6.     Plaintiff, Rosa Gloria Reveles is entitled to post-judgment interest on the total amount of the judgment and any prejudgment interest awarded hereinabove, at the rate of 5.0% per annum, compounded annually, from the date this Final Judgment is signed until the judgment is fully satisfied.

**IT IS ORDERED** that Plaintiff, Rosa Gloria Reveles is entitled to enforce this judgment through abstract, execution and any other process necessary.

**SIGNED** on _May 3_____, 2017.

_____
JUDGE PRESIDING

CC:

Alexander Begum; abegum@texaslegalgroup.com
Mario A. Cisneros; mcisneros@texaslegalgroup.com; adavila@texaslegalgroup.com
Victor Quintanilla; vquintanilla@patton-lawfirm.com
Saul Wences, 300 Mambrino Highway, Grandbury, Texas 76048

FILED ____ o'clock ___ M
**ERIC GARZA** - DISTRICT CLERK

**MAY 17 2017**

DISTRICT COURT OF CAMERON COUNTY, TEXAS
By_____ Deputy #27